S. J. Nelson *vs.* Chicago, Milwaukee & St. Paul Railway
Company.

December 15, 1882.

**Railroad Companies—Liability for Proximate Consequences of Neglect to Fence.**—The liability of a railroad company, under Gen. St. 1878, *c.* 34, § 55, for injuries to domestic animals in consequence of its neglect to build and maintain fences on each side of its road, is not limited to injuries caused by collision with trains, but extends to any injury which is the natural and proximate consequence of such neglect; that is, any injury to animals getting upon the railroad which might naturally and reasonably be expected to result from such neglect, in view of the character and condition of the railroad, and the uses to which it is put.

**Same—But not for Remote Consequences.**—But the statute does not change the general rules of law governing liability for negligence, so as to make a railroad company liable for every injury which would not have occurred had a fence been built, regardless of the fact whether the neglect to fence was the proximate or only the remote cause of such injury. As in other cases of negligence the company is only liable for injuries of which the neglect to fence is the proximate cause, and which are the natural and proximate consequences of such neglect.

**Same—Injury to Animal held too Remote.**—In this case the evidence tended to show that the animal, while running along the railroad track, set its foot into a small hole in the ground, not ordinarily dangerous, and about the size of its own foot, and thereby, in some way not otherwise explained, broke its leg. *Held,* that the injury, being one that is not usual, and which would not reasonably and naturally be expected to result from a neglect to fence the road, cannot be said to be the natural and proximate consequence of such neglect, and hence must be attributable to chance or accident, and not the neglect of the defendant.

Appeal by defendant from an order of the district court for Freeborn county, *Farmer*, J., presiding, refusing a new trial. The case is stated in the opinion.

*Cameron, Losey & Bunn,* for appellant, cited *Morrison* v. *Davis,* 20 Pa. St. 171; *Railway Co.* v. *Reeves,* 10 Wall. 176; *Denny* v. *N. Y. C. R. Co.,* 13 Gray, 481; *A., T. & S. F. R. Co.* v. *Edwards,* 20 Kan. 531.

*Lovely & Morgan,* for respondent.

The neglect of the statutory duty to fence was a proximate cause of the injury. 2 Thompson on Negligence, 1232; Cooley on Torts, 70; *Siemers* v. *Eisen,* 54 Cal. 418; *Salisbury* v. *Herchenroder,* 106 Mass. 458; *Mil. & St. P. Ry. Co.* v. *Kellogg,* 94 U. S. 469; *Clemens* v. *Hannibal & St. J. R. Co.,* 53 Mo. 366; *Fent* v. *Toledo, etc., Ry. Co.,* 59 Ill. 349; *Lake* v. *Milliken,* 62 Me. 240; *Fairbanks* v. *Kerr,* 70 Pa. St. 86; *Powell* v. *Salisbury,* 2 Younge & J. 391; *Lee* v. *Riley,* 18 C. B. (N. S.) 722.

MITCHELL, J.   This was an action to recover the value of a mule alleged to have been fatally injured by reason of defendant's neglect to fence its road as required by law. As disclosed by the evidence the facts were these: The track of defendant's road was not fenced where it crosses plaintiff's land. One evening, as plaintiff was leading a span of mules to water, they, without fault on his part, escaped from him and ran upon the railroad, where one of them, while running along the track, broke his leg. The evidence is very meagre as to how the accident occurred, and leaves the matter largely to conjecture; but, so far as it throws any light upon the question, it tends to show that while the mule was running and jumping along the railroad track, it set its foot into a small hole in the soil between the ties, and in some unexplained way broke its leg. The hole was a small one, "about the size of a mule's foot," and from two to four inches in size "each way." There was no train along the track at the time of the injury. This was substantially all the evidence in the case.

Gen. St. 1878, *c.* 34, § 54, imposes upon all railroad companies the duty to build good and sufficient fences on each side of their roads. Section 55 of the same chapter provides that "all railroad companies shall be liable for domestic animals killed or injured by the negligence of such companies, *and a failure to build and maintain* * * * *fences as above provided shall be deemed an act of negligence on the part of such companies.*" It has been urged that the liability of railroad companies under this statute, for injuries to domestic animals resulting from a neglect to build and maintain fences, extends only to those caused by collision with moving trains. Doubtless this class of injuries is much the most numerous, and is the one

which the legislature had mainly in mind. But the terms of the statute are too general to warrant so restricted a construction. In our opinion it will apply to any injury which is the natural and proximate consequence of a neglect to build and maintain fences as required by law, and a railroad company which neglects to fence its road will be liable for all injuries to domestic animals which might naturally and reasonably be expected to result from such neglect, taking into consideration the character and condition of its road, and the purposes for which it is used. Hence, whenever an injury to a domestic animal can, according to well-understood legal rules, be said to be the legal and natural consequence of a failure to fence, then the railroad company will be liable, whatever may have been the particular circumstances under which the injury occurred.

But, on the other hand, it was neither the design nor the effect of the statute to make a railroad company liable absolutely for all injuries which would not have occurred had a fence been built, regardless of the fact whether such injury was the direct and natural, or only the remote and accidental, consequence of the absence of a fence, or whether the neglect to fence was merely the occasion and not the natural cause of the injury. The statute makes no such radical change in the general legal principles governing the law of negligence. The first part of section 55 is simply declaratory of the common law; the latter clause of the section simply adds one act or omission which shall be deemed negligence *per se*. But in determining the liability of a railroad company in a given case, the existing rules of law still apply. These are familiar and elementary. To entitle the plaintiff to recover, it is not enough that the defendant was negligent. Negligence is not actionable unless it be the proximate cause of the injury. Neither is it enough that, if a fence had been built, the mule would not have gotten upon the track, and hence would not have been injured. The omission to build the fence must have been the cause, and not the mere occasion, of the injury. The breach of duty on the part of the company was its neglect to build a fence. The damages for which it would be liable must be the natural and direct consequence of such neglect.

In strict logic it may be said that he who is the cause of loss should

be answerable for all the losses which flow from his causation. But a strict application of any such logic would set society on edge, and fill the courts with useless and endless litigation. Hence, courts adopt the more practical rule of looking only to the proximate cause, and to the natural and proximate, or immediate and direct, damages resulting from an act of negligence. The rule is one rather difficult to formulate in general terms, and not always of easy application, much depending upon the particular facts of each case. But a long series of judicial decisions has defined proximate, or immediate and direct, damages to be the ordinary and natural results of the negligence, such as are usual, and as, therefore, might have been expected. In one case it has been stated thus: "Every person who does a wrong is responsible for all the mischievous consequences that may reasonably be expected to result, under ordinary circumstances, from such misconduct." Or, again: "Whoever does a wrongful act is answerable for all the consequences that may ensue in the ordinary and natural course of events, though such consequences be immediately and directly brought about by intervening causes, if such intervening causes be set in motion by the original wrong-doer." Addison, in his work on Torts, states the doctrine thus: "If the wrong and the resulting damages are not known by common experience to be naturally and usually in sequence, and the damage does not, according to the ordinary course of events, follow from the wrong, then the wrong and damage are not sufficiently conjoined or concatenated as cause and effect to support an action." If the injury was one which a man of ordinary experience and sagacity could foresee might probably ensue from a failure to fence, then the damage would be sufficiently proximate and direct to entitle the injured party to recover.

All these different statements of the principle would, it will be seen, necessarily include in the category of remote damages, for which no recovery can be had, such as are the result of an accidental or unusual combination of circumstances, which would not be reasonably anticipated, and over which the negligent party had no control. Now, even if the most favorable and liberal statement of the doctrine be adopted and applied, we think this verdict cannot be sustained. If this animal had been struck by a passing train, it would

be just such an accident as might reasonably have been anticipated, and hence the neglect to fence would be the natural and proximate cause of the injury. So, if it had been injured by falling into a trestle or cattle-guard while following the track—at least, this would be a question of fact to submit to a jury to say whether it was the natural and proximate consequence of the neglect to fence. But if the chance of an injury from the cause which produced the damage in this case was so slight and remote that it could not be reasonably anticipated by any one, then the injury would be properly attributed to chance and accident, and not to the neglect of defendant. *Holden* v. *Rutland & Burlington R. Co.*, 30 Vt. 297. But who would or could have anticipated that this animal would have broken its leg by setting its foot into a small hole in the ground, only the size of its own foot? It might have travelled the track a thousand times without once putting its foot into such a hole, and it might put its foot into the hole a thousand times without once sustaining an injury. Such an accident is as likely to occur elsewhere as upon the railroad track. Probably every acre of any pasture field in the state has holes or inequalities in the surface as large and as liable to cause such an injury as this one.

The fact is, the injury was not one reasonably to be apprehended, and did not follow as a natural or ordinary sequence from the absence of a fence. We can see no real difference in principle between the case at bar and one where an animal strays upon a railroad track and is there killed by lightning or a stray rifle ball, or (if objection is made to the cases supposed because some external independent power intervened) a case where the animal, after getting upon the railroad right of way, ran a thorn into its foot, or was injured by the falling of a tree not previously deemed dangerous.

None of the cases cited by plaintiff go far enough to sustain him. In the case of *Salisbury* v. *Herchenroder*, 106 Mass. 458, the injury was the direct and natural result of suspending the sign over the street contrary to the city ordinance. In *Siemers* v. *Eisen*, 54 Cal. 418, the injury was the immediate and natural result of leaving a horse unhitched, contrary to ordinance. The case of *Powell* v. *Salisbury*, 2 Younge & J. 391, so often cited, is the one most analogous to

the case at bar, but is really not in point. This was a case where the plaintiff declared against the owner of the adjoining close for not repairing his fences, *per quod* plaintiff's horses escaped into the defendant's close, and were killed by the falling of a hay-stack. But in this case there was a general verdict for the plaintiffs, and a motion was then made in arrest of judgment, and the case turned upon the sufficiency of the declaration as against such a motion, where every intendment obtained in favor of the verdict. Moreover, the second count of the declaration alleged the *dangerous condition of the stack.* In view of the well-known habits of domestic animals to resort to hay-stacks, if the condition of the stack was dangerous, the injury was one that might reasonably have been expected to ensue.

In the present case there was clearly no basis whatever for the theory advocated on the trial that even if defendant was not liable under the statute for its failure to build a fence, it might still be liable on some sort of common-law principles. It was either liable for the injury as the result of its neglect to build a fence as required by law, or it was not liable at all.

Order reversed and a new trial granted.

BERRY, J. I agree to the final conclusion arrived at in the majority opinion, but not to the reasoning by which it is reached. Under our statute, I think, the liability of a railroad company for injuries to domestic animals going upon its so-called right of way, in consequence of the company's neglect to build or maintain fences, is a liability for such damages only as result from the fact that the right of way is used for railroad purposes. In other words, it is a liability for what may for short be styled *railroad damages* only, or such as result from the fact that there is a *railroad* there. The injury resulting in this case to the plaintiff's mule from stepping into the small hole between the ties, evidently does not come within this description of damages.