Todd M. DANIELSON, Appellant,

v.

Russell JOHNSON, et al., Respondents.

No. CO–84–1402.

Court of Appeals of Minnesota.

April 16, 1985.

Review Denied June 24, 1985.

John M. Steele, Minneapolis, for appellant.

V. Owen Nelson, Kay Nord Hunt, Minneapolis, for respondents.

Heard, considered and decided by HUSPENI, P.J., and FOLEY and WOZNIAK, JJ.

## OPINION

FOLEY, Judge.

The plaintiff in a personal injury action appeals the trial court's denial of a new trial or a judgment notwithstanding the verdict (JNOV). He alleges errors in the trial court's evidentiary rulings, and in the court's application of the no-fault offset provision. In addition, he alleges that the evidence does not support the jury's allocation of fault between the defendant, two liquor stores and himself. We affirm in part, reverse and remand in part.

## FACTS

One evening in April 1980, defendant/respondent Russell Johnson picked up Kayla Thompson and plaintiff/appellant Todd Danielson. All three were minors. Johnson drove to the Tonka Bay Municipal Liquor Store and gave Danielson money to buy liquor. Danielson illegally purchased a bottle of champagne for Thompson and twelve beers for himself and Johnson.

The group later learned that classmate Brian Smith and Tony Johnston, all minors, bought a 16 gallon keg of beer from the Shorewood Liquor Store for a party. Smith sold glasses to guests for $2 each to recoup the cost of the keg. Guests purchasing a glass could drink as much as they wanted from the keg.

Johnson, Danielson and Thompson arrived at the party between 7:30 and 8:00 p.m. Johnson took a six-pack of beer with him to the party. He drank that and another four to six glasses of keg beer that evening. Danielson had three to five glasses of keg beer. Since the young men went their separate ways at the party, Danielson was not aware of precisely how much Johnson drank. However, he knew Johnson had purchased a glass and saw him with beer in hand. The two had attended numerous keg parties together during the preceding six months. Danielson estimated that Johnson usually drank five or more beers at such parties.

The party broke up between 11:00 p.m. and midnight. Johnson testified that when he and Danielson and Thompson left the party he was "feeling the beer," but was not "falling down drunk." However, Danielson and Smith testified that they did not recall any signs that Johnson was intoxicated. Johnson drove west on Highway 7 at 65 to 80 miles per hour. When making a left turn onto Minnewashta Parkway he lost control and hit a telephone pole. The impact crushed the passenger door and injured Danielson and Thompson.

The police officer who investigated noted alcohol on the breath of all three minors. He observed no other signs that Johnson was intoxicated. The officer requested a blood sample from Johnson because he was a minor and the driver of a vehicle involved in an accident. Johnson had a blood alcohol reading of .12 at 1:45 a.m. A toxicologist calculated that the concentration would have been .13 at midnight.

Danielson brought two actions, a negligence action against Johnson, and a dram shop action against the liquor stores and the hosts of the party. The trial court granted summary judgment in favor of the social hosts, and Danielson settled with the liquor stores under Pierringer releases.

The extent and permanency of Danielson's injuries were contested at trial. All of the doctors agreed that he suffered a broken leg and fractures of the pelvis. The bones mended well, but the injury left Danielson with one leg ¾ inch shorter than the other. Danielson's treating physician testified that Danielson had suffered 10% permanent partial disability because of the shortening of his leg.

In addition, Danielson, his fiancee, and his mother testified that he suffered from a stiff, sore leg and perennial head, neck and back aches. A chiropractor and a neurologist testified that his complaints were the result of soft tissue injuries and strain on the back caused by the shortening of the leg. However, Danielson never complained of such ailments to his treating physician, whom he stopped seeing ten months after the accident. He resumed playing tennis, softball and hockey after the injury. He held several jobs involving heavy manual labor. An orthopedist who examined Danielson for the defendant testified that he found no physical cause for Danielson's complaints.

The jury found that Danielson suffered damages of $67,000 and allocated fault as follows:

| | |
|---|---|
| Defendant Russell Johnson | 42.5% |
| Plaintiff Todd Danielson | 12.5% |
| Tonka Bay Liquor Store | 22.5% |
| Shorewood Liquor Store | 22.5% |

### ISSUES

1. Did the trial court err by submitting to the jury the issue of the plaintiff's negligence?

2. Did the trial court err by submitting to the jury the issue of the liquor stores' negligence?

3. Does the evidence support the jury's apportionment of fault to the plaintiff and the two liquor stores?

4. Did the trial court err by admitting a toxicologist's expert testimony concerning plaintiff's blood alcohol level at the time of the accident?

5. Did the trial court err in admitting the results of the defendant driver's blood alcohol test?

6. Did the trial court err in allowing an orthopedist to give his opinion concerning

possible psychosomatic causes for plaintiff's aches and pains?

7. Did the trial court err in allowing the defendant to inquire into plaintiff's insurance coverage to impeach the credibility of his statement that he did not go to the doctor because he could not afford treatment?

8. Did the trial court err in its application of Minn.Stat. § 65B.51, subd. 1 (1980), the no-fault offset provision?

## ANALYSIS

■ 1. Appellant argues that the trial court erred by submitting to the jury the issue of his contributory negligence. Generally, the question of contributory negligence is one for the jury. *Nelson v. Nelson,* 283 N.W.2d 375, 377 (Minn.1979). Only if different minds can reasonably arrive at but one result does the issue become one for the court to decide. *Nelson* at 377, (citing *Stenzel v. Bach,* 295 Minn. 257, 259, 203 N.W.2d 819, 821 (1973)).

■ Appellant contends the question of his negligence should not have gone to the jury because there was no eyewitness testimony that the driver was visibly intoxicated. However, it is undisputed that Danielson knew Johnson was drinking and that appellant purchased six cans of strong beer for Johnson. Moreover, Johnson and Danielson had established a pattern of attending "kegger" parties together over a period of six months. Danielson knew that Johnson would consume more than three to five beers that evening. Danielson also knew that Johnson had purchased a glass for himself at the party, which entitled him to drink as much beer there as he wanted.

Although Danielson denies that Johnson showed any visible signs of intoxication, Danielson knew that Johnson had been steadily consuming alcoholic beverages for about four hours. Whether Danielson knew or should have known that Johnson was drunk and that his driving ability would consequently be impaired were questions upon which reasonable minds might differ. Therefore, the question was properly submitted to the jury.

■ 2. Danielson settled and entered into a Pierringer release with Tonka Bay Municipal Liquor Store and Shorewood Liquor Store. The trial court properly dismissed those parties from the lawsuit and submitted the issue of their negligence to the jury. *Frey v. Snelgrove,* 269 N.W.2d 918, 922 (Minn.1978).

Danielson argues that the liquor stores should not be liable since the sales to the minors either were not the proximate cause of defendant's negligent driving or because the stores were insulated by intervening causes.

■ Proximate cause exists if negligent conduct was a substantial factor in bringing about the injury. *Flom v. Flom,* 291 N.W.2d 914, 917 (Minn.1980). Proximate cause is a question for the jury. *Frey v. Montgomery Ward & Co.,* 258 N.W.2d 782, 787 (Minn.1977). Apportionment of negligence should be left to the jury except in rare cases where there is no dispute in the evidence and the factfinder could come to only one conclusion. *Cooper v. Friesen,* 296 Minn. 160, 163, 207 N.W.2d 742, 744 (1973).

■ Here, there is evidence for the jury's findings that the liquor stores made illegal sales to minors, that such sales proximately contributed to Johnson's intoxication, and that Johnson's intoxication was the proximate cause of the collision. There was no error in the assignment of proximate cause.

■ The Minnesota Supreme Court has held that intoxicants consumed due to illegal sales need not be the sole cause of intoxication, but may be a concurring or proximately contributing cause, to hold the liquor store liable. *Murphy v. Hennen,* 264 Minn. 457, 119 N.W.2d 489 (1963). It was not error to submit the liquor vendor's negligence to the jury, and the jury did not err in apportioning 22.5% fault to each liquor store.

3. Danielson argues that the evidence does not support the jury's allocation of fault to himself and the liquor stores. On appeal, the evidence must be viewed in the light most favorable to the prevailing party. *Lesmeister v. Dilly,* 330 N.W.2d 95, 100 (Minn.1983). A jury's verdict or apportionment of fault will not be reversed unless manifestly and palpably contrary to the evidence. *Rieger v. Zackoski,* 321 N.W.2d 16, 24 (Minn.1982).

The jury's apportionment of fault was not manifestly wrong. Based on the evidence before it, the jury could reasonably find that Johnson became intoxicated and that his intoxication caused the accident. The jury's finding that each of the two stores was 22.5% at fault is supported by evidence of the stores' illegal sale of liquor to minors. Likewise, the jury could find Danielson 12.5% at fault for illegally purchasing beer for Johnson and riding with him when he should have known that Johnson was intoxicated. Therefore, the jury's apportionment of fault was not error.

4. Danielson also objects to the trial court's admission of a toxicologist's expert testimony concerning plaintiff's blood alcohol level at the time of the accident. He claims the toxicologist's calculations omitted important facts and were based on assumptions not supported by the record.

A trial court has broad discretion in determining the sufficiency of the foundation laid for an expert opinion and its decision will not be reversed except for a clear abuse of that discretion. *Wenner v. Gulf Oil Corp.,* 264 N.W.2d 374, 382 (Minn. 1978) (citing *Briggs v. Chicago G.W. Ry. Co.,* 248 Minn. 418, 429, 80 N.W.2d 625, 635 (1957)). *See* Rules 104, 702, 703, 705, Minn. R.Evid.

Here, the toxicologists' expert opinion was based upon mathematical calculations taking into account only three facts: the drinker's weight, the number of drinks consumed and the period over which they were consumed. His conclusion that Johnson would have had a blood alcohol concentration of .13 at midnight was based

on the assumption that Johnson weighed 185 pounds and drank 10 strong beers in the four hours preceding the accident. Johnson's weight was undisputed. The other two assumptions were supported by Johnson's testimony that he finished the six pack and drank four to six glasses of beer at the party. There was no error.

5. Danielson challenged the relevancy of the BCA blood test results at trial, but he never objected that they were inadmissible hearsay. Therefore, he is barred from raising the objection for the first time on appeal. *American Machine and Tool Co., Inc. v. Strite-Anderson Manufacturing Co.,* 353 N.W.2d 592, 598 (Minn.Ct.App.1984), *rev. denied.*

6. Danielson also objected to expert testimony by an orthopedist concerning possible psychogenic causes for his aches and pains. Over Danielson's objection of incompetency, the trial court allowed the orthopedist to testify that because he could find no physical reasons for Danielson's complaints, he concluded they were psychosomatic.

It is within the trial court's broad discretion to determine the sufficiency of the foundation laid for an expert opinion. *Wenner,* 264 N.W.2d at 382. An opinion of a medical expert witness based upon an adequate factual foundation is not conjecture but is a legitimate inference. *Bernloehr v. Central Livestock Order Buying Co.,* 296 Minn. 222, 225, 208 N.W.2d 753, 755 (1973).

Dr. Drill, an orthopedic surgeon, was asked to conduct an independent medical evaluation of Danielson. His opinion that the reasons for some of Danielson's complaints were psychosomatic was based on an inference, since Drill could find no physical reason for the complaints.

Although the trial court could have excluded the opinion, its admission was not abuse of discretion. The jury was aware of the orthopedist's qualifications and the facts which supported his conclusion. It was their duty to weigh his testimony.

7. Danielson contends that the trial court erred by permitting the defendant to ask about his insurance coverage. At trial, Danielson said twice that he stopped seeing his doctor in part because he could not afford continued treatment. In fact, unknown to him, his medical bills were covered under his father's insurance.

The judge permitted defendant to inquire into Danielson's insurance coverage for the limited purpose of rebutting his statement about treatment. The judge instructed the jury to consider the evidence of insurance only as rebuttal of Danielson's statement that he could not afford further medical treatment.

 Respondent was entitled to inquire about matters affecting Danielson's credibility. *See* Rule 611(b), Minn.R.Evid. Moreover, the Minnesota Supreme Court has recognized that in certain situations it is not error to admit evidence showing the existence of insurance. *Wilson v. Home Gas Co., Inc.,* 267 Minn. 162, 125 N.W.2d 725 (1964). There was no error.

8. Danielson contends the trial court erred in its application of Minn.Stat. § 65B.51, subd. 1 (1980). The court reduced the judgment against Johnson by the full $12,226.83 that Danielson received in no-fault medical benefits. Danielson argues no deduction may be made in the absence of a special verdict identifying the amount awarded for economic and non-economic damages suffered. Otherwise, he contends, the offset for no-fault economic benefits could invade the recovery intended by the jury for non-economic losses. *See Tuenge v. Konetski,* 320 N.W.2d 420 (Minn. 1982).

 The trial court gave a general instruction on damages, but did not submit a special interrogatory to the jury regarding the special damages. Generally, there can be no set off under Minn.Stat. 65B.51, subd. 1, without a special interrogatory to the jury, because the set off might impair the judgment and invade the general recovery. *See Tuenge.* However, in this case, both sides stipulated at trial that past medical expenses of $9,556.25 were fair, reasonable and necessarily incurred due to the accident. (This includes $9,076.25 for hospital, $40 for emergency physician fee, and $440 for sick room service.)

 While the trial court gave an instruction to the jury on damages for future medical expenses, the record is devoid of any evidence to support such an award. Thus, we find no basis to apply the holding of *Ferguson v. Illinois Farmers Insurance Group Co.,* 348 N.W.2d 730 (Minn. 1984), with respect to the future medical expenses.

 Under the facts of this case, the stipulated items of special damage, not challenged in any fashion, are deemed to be included in the total verdict returned by the jury. The trial court allowed set off in the total sum of $12,226.83, representing the total amount of no-fault benefits paid by the no-fault carrier. That, however, is not the test. *See Tuenge.* The amount stipulated at trial and included in the verdict in the sum of $9,556.25 controls, and may be allowed as set off under Minn.Stat. § 65B.51, subd. 1.

## DECISION

The trial court is affirmed except that the money judgment in favor of Danielson is modified to reflect a set off of only $9,556.25. Affirmed and modified, and remanded for correction of judgment.