Richard FETTE, trustee for the
next-of-kin of Gregory Fette, et
al., Respondents,

v.

Mark D. PETERSON, Respondent,

Rusty Redning, d.b.a. Embassy
Bar, Appellant,

LeRoy Blaschko, d.b.a. Peterson's
Recreational Center, Defendant.

No. CX–86–1783.

Court of Appeals of Minnesota.

April 28, 1987.

Review Denied June 26, 1987.

Peter J. Schmitz, Schmitz and Ophaug, Northfield, for Richard Fette, trustee for the next-of-kin of Gregory Fette, et al.

Laura Jean Hanson, Gary W. Hoch, Meagher, Geer, Markham, Anderson, Flaskamp and Brennan, Minneapolis, for Gregory Fette, decedent.

Andrew A. Willaert, Jr., Hottinger Law Offices, Mankato, for Mark D. Peterson.

Peter E. Lind, Foster, Waldeck & Lind, Ltd., Minneapolis, for Rusty Redning, d.b.a. Embassy Bar.

Considered and decided by CRIPPEN, P.J., and WOZNIAK and MULALLY,* JJ. with oral argument waived.

---

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

## OPINION

WOZNIAK, Judge.

Rusty Redning, the owner and operator of the Embassy Bar, appeals from a post-trial order denying his motion for a new trial or, in the alternative, JNOV, on the jury verdict which found Redning liable under a dram shop claim and Mark Peterson liable under a wrongful death claim, arising from a car accident which killed Gregory Fette. We affirm.

## FACTS

On December 15, 1984, Peterson was driving his car on a highway outside of Faribault, Minnesota. Peterson reached the intersection at the same time as Fette. Peterson mistakenly thought that a stop sign at the intersection was a green light. Peterson ran the stop sign at a high speed colliding with Fette's vehicle. Fette, 16 years old at the time, died in the accident.

On the evening of the accident, Peterson had been drinking at Redning's Embassy Bar. After drinking at the Embassy Bar, he bowled a game at Peterson's Recreational Center and drank several alcoholic beverages. He then returned to the Embassy Bar for the second time that evening, where he had about five mixed drinks of rum and coke. Friends purchased three of the five alcoholic beverages.

Except for a "thick tongue," Peterson did not believe that he did or said anything at the Embassy Bar that would lead the others to believe that he was intoxicated. Eyewitnesses from the Embassy Bar who spoke to Peterson that night stated that he did not appear to be intoxicated. Fette's expert testified that a hypothetical Peterson would have shown obvious signs of intoxication while Redning's expert stated that a hypothetical Peterson would not have shown obvious signs.

Fette's heirs brought a dram shop action against Redning under Minn.Stat. § 340.95 (1984), and a wrongful death action against Peterson under Minn.Stat. § 573.02 (1984).

Before trial, plaintiffs reached an agreement with Federated Insurance, the underinsured motorist carrier. The agreement provided that Federated would pay $150,000 of the $300,000 policy on the day following the verdict, regardless of the verdict, in exchange for a release of liability for any wrongful death claim arising from Fette's death. Federated did not intervene in the trial and promptly paid as agreed and with the court's approval. Peterson admitted to causal fault and the jury also found Redning to be causally at fault. The jury apportioned liability at 75% for Peterson and 25% for Redning, jointly and severally, and found damages of $203,000.

Redning brings this appeal from the trial court's order denying his motion for a new trial or JNOV.

## ISSUES

1. Did the trial court abuse its discretion or commit a fundamental error in law in its instructions to the jury?

2. Did the trial court err in not deducting no-fault payments from the verdict?

3. Did the trial court err in not deducting the uninsured motorist payment from the verdict?

4. Does joint and several liability apply in a dram shop action?

## ANALYSIS

1. Jury Instructions.

■ A. *Superseding Cause.* Redning argued that the trial court erred in failing to give an instruction on superseding cause. The superseding cause instruction is appropriate only in negligence cases. *Cf. Regan v. Stromberg,* 285 N.W.2d 97, 100 (Minn.1979) (elements necessary for a superseding cause require an original negligent act). The Dram Shop Act provides for a strict liability action without regard to "fault in the sense of any wrongful intent or negligent conduct." *Dahl v. Northwestern National Bank of Minneapolis,* 265 Minn. 216, 220, 121 N.W.2d 321, 324 (1963) (footnote omitted). A negligence instruction is inappropriate in a strict liability case.

■ In addition, the policy of the Dram Shop Act precludes such an instruction. In

its thorough and well-reasoned memorandum, the trial court noted:

> [I]f the proposition advanced by Defendant Redning were true, namely, that the driving conduct of Defendant Peterson after he left the bar was a superseding cause of the accident, then every bar would have superseding cause as a defense, and the Dram Shop Act would be rendered ineffective.

We agree with the trial court and hold that it did not err in refusing to give the superseding cause instruction.

■ B. *Gross Misdemeanor Instruction.* Redning requested that the judge instruct the jury about the penalty for criminal violation of the dram shop law. The trial court stated that it appeared that Redning

> requested the instruction for the purpose of discouraging the jury from finding Embassy Bar made an illegal sale for fear of causing Redning to be convicted and punished for a gross misdemeanor. Such instruction would have encouraged the jury to make a finding contrary to the evidence and not follow the law. The criminal provisions are irrelevant to the Dram Shop issues, and the requested instructions could only confuse and mislead the jury.

We agree with the trial court.

■ C. *Elements of the Dram Shop Statute.* The trial court instructed, using the language of JIG II 449, that "a plaintiff may recover from one who makes an illegal sale of an alcoholic beverage when such illegal sale causes *or contributes* to a person's intoxication." Redning objected to the use of the words "or contributes."

In *Hahn v. City of Ortonville*, 238 Minn. 428, 57 N.W.2d 254 (1953), the court stated:

> In order to establish liability for an illegal sale under the civil damage act, § 340.95, the liquor sold need not be the sole cause of intoxication but it is enough if it is a cooperating, concurring, or proximately contributing cause.

*Id.* at 432, 57 N.W.2d at 258–59 (footnote omitted). The trial court's instruction duplicated the standard jury instruction and is

within the supreme court's interpretation of the dram shop statute.

D. *Joint and Several Liability.* Redning argued that under Rule 49.01(2) the trial court should have instructed the jury regarding the effect of the application of joint and several liability. Rule 49.01(2) provides that, in actions involving the comparative fault statute, the court must inform the jury of the effect of its answers to the percentage of negligence question and shall permit counsel to comment. Minn.R.Civ.P. 49.01(2).

■ The Rule 49.01 exception is intended to permit the plaintiff, where the plaintiff's contributory fault is at issue, to inform the jury that, if the plaintiff's fault is greater than the defendant's, recovery will be denied. *See* 2 D. Herr & R. Haydock, *Minnesota Practice*, § 49.12, at 433 (2d ed. 1985). The rule applies only to comparative fault cases and we find no authority to suggest that the rule has been extended to joint and several liability. *See id.*

E. *Instruction Regarding Peterson's Negligence.* Redning argued that the court should not have instructed the jury that Peterson's negligence did not affect the Fettes' right to recover under the dram shop statute.

■ The dram shop statute does not require that the intoxicated person be negligent; rather, the statute requires only that the plaintiff be injured by the intoxicated person. *See* Minn.Stat. § 340.95 (1984). The parties do not dispute that Fette was killed because of Peterson's intoxication. Since the dram shop statute imposes strict liability on the liquor vendor, Peterson's negligence does not affect Redning's liability under the statute.

■ The trial court stated in its memorandum:

> [B]ecause of the admission of negligence by Peterson, and the fact that the jury had no finding to make on the question of the driver's negligence, it was necessary for the jury to be advised that it still must decide the dram shop issue. The giving of an additional instruction did not

distract the jury, but rather advised it that the fault of the driver was not the only question before it. Without the additional instruction, there was potential for jury confusion that the admission of negligence precluded a determination of the dram shop violation.

We agree with the trial court that such an instruction was not prejudicial, but more fully informed the jury.

F. *Alcoholic Beverages Purchased By Others for Defendant.* Redning argued that the trial court erred in instructing the jury that an illegal sale can still occur if someone other than the intoxicated individual purchased the alcoholic beverage. The trial court instructed that "[i]n order for there to be an illegal sale, it is not necessary for the intoxicated person to have paid for the drink himself."

■ Section 340.95 does not distinguish between intoxicating beverages purchased by or as a gift to the intoxicated individual. Rather, a cause of action exists against anyone who illegally sells intoxicating liquor to an intoxicated person, whether the intoxicated person bought the drinks himself or the drinks were purchased by others. *Id.*

■ The trial court stated in its posttrial order that

the instruction made it clear that there must be a 'sale'. Moreover, Embassy Bar never claimed that a gift of liquor had been made to Mark Peterson. The instruction merely clarified that the sale need not be made directly to the obviously intoxicated person. Embassy Bar's argument is without merit.

We agree with the trial court.

2. Effect of No-Fault Benefits on the Verdict.

Redning argued that Minn.Stat. § 65B.51, subd. 1 requires that basic economic loss benefits be deducted from the verdict.

With respect to a *cause of action in negligence* accruing as a result of injury arising out of the operation, ownership, maintenance or use of a motor vehicle with respect to which security has been provided as required by section 65B.41 to 65B.71, there shall be deducted from any recovery the value of basic or optional economic loss benefits paid or payable, or which would be payable but for any applicable deductible.

Minn.Stat. § 65B.51, subd. 1 (1986) (emphasis added). While the statute may apply to negligence claims, the dram shop claim, as noted above, is a strict liability action. The cases cited by Redning for the proposition that no-fault benefits are deducted from the verdict involve negligence actions, rather than dram shop actions.

■ A verdict against a bar owner in a dram shop action is not subject to reduction by the amount of basic economic loss benefits the plaintiff receives from an insurance carrier. *See Newmaster v. Mahmood*, 361 N.W.2d 130, 135 (Minn.Ct.App.1985). Accordingly, the trial court did not err in rejecting Redning's claim.

3. Effect of Underinsured Motorist Benefits on the Verdict.

■ Redning argued that the Fettes' settlement with the underinsured insurance carrier resulted in a double recovery, which was precluded by section 65B.51, subd. 1. The settlement agreement required the Fettes to refund the benefits received if the verdict exceeded those payments, thereby precluding double recovery. The *Newmaster* court endorsed this type of agreement, stating that no double recovery occurs if plaintiff is obligated by settlement agreement with the insurer to refund this amount. *Newmaster*, 361 N.W.2d at 134–35. Accordingly, even if section 65B.51 applied to dram shop actions, the nature of this subrogation agreement precluded double recovery.

4. Joint and Several Liability in Dram Shop Actions.

■ Finally, Redning argued that joint and several liability did not apply to dram shop cases. Joint and several liability applies to defendants even though liability is predicated on two different legal theories, such as wrongful death and dramshop.

*See Erickson v. Hinckley Municipal Liquor Store,* 373 N.W.2d 318, 325 (Minn.Ct. App.1985); *see also Fox v. City of Holdingford,* 375 N.W.2d 44, 47 (Minn.Ct.App. 1985) (following *Erickson, id.,* and holding an uninsured drunk driver and a liquor vendor jointly and severally liable), *pet. for rev. denied* (Minn. Dec. 13, 1985). In *Ketterling v. The Spud Bar, Inc.,* 398 N.W.2d 599 (Minn.Ct.App.1987), *pet. for rev. denied* (Minn. Feb. 18, 1987), this court specifically rejected Redning's argument that the Dram Shop Act refers only to comparative fault and does not impose joint and several liability, stating:

> Appellant believes joint and several liability is inapplicable to this case based on a reading of the revised Dram Shop Act, § 340A.801, and the inherent contradiction between the doctrine and Minnesota's policy of comparative fault.
>
> \*   \*   \*   \*   \*   \*
>
> \* \* \* The prevailing state policy and judicial emphasis stress the need for full recovery. If joint and several liability was not meant to apply, the legislature would have plainly said so. *Hosley* indicates Minn.Stat. §§ 604.01 [comparative fault] and 604.02 [joint and several liability] can peacefully co-exist and that the two are read together, even if only comparative negligence is stated to apply.

*Id.* at 601, 602 (citing *Hosley v. Armstrong Cork Co.,* 383 N.W.2d 289, 292 (Minn. 1986)). Accordingly, Redning's claim that joint and several liability does not apply in dramshop claims is without merit.

### DECISION

The trial court is affirmed in all respects.