**Erin J. OSBORNE, individually and as parent and natural guardian of Alexia Ray Osborne Riley, et al., Appellants,**

v.

**TWIN TOWN BOWL, INC., d/b/a Jerry Dutler Bowl, Respondent.**

No. A06–1007.

Court of Appeals of Minnesota.

April 24, 2007.

Kenneth R. White, MacKenzie Gustafson, Ltd., St. Peter, MN, for appellants.

Steven E. Tomsche, Daniel P.H. Reiff, Bryan B. Carroll, Tomsche, Sonnesyn Tomsche, P.A., Minneapolis, MN, for respondent.

Considered and decided by HALBROOKS, Presiding Judge; TOUSSAINT, Chief Judge; and ROSS, Judge.

## OPINION

TOUSSAINT, Chief Judge.

In this civil-damage action, appellants Erin J. Osborne, individually and as parent and natural guardian of Alexia Ray Osborne Riley, Michael R. Riley Sr., Marie A. Riley, and Kelly M. Riley challenge the summary judgment entered in favor of respondent Twin Town Bowl, Inc. d/b/a Jerry Dutler Bowl on the issue of proximate cause. Because the undisputed facts do not support a proximate-causal relationship between the decedent's intoxication and his drowning, we affirm.

## FACTS

After drinking with friends, Michael Riley Jr. left Jerry Dutler Bowl. Shortly thereafter, about 1:30 a.m., on April 20, 2001, a state trooper clocked Riley driving 74 miles per hour in a 50–mile–per–hour zone. Based on the radar reading, the trooper turned around, speeded up, and activated his squad car's emergency lights and siren. He followed as Riley took an exit ramp, maneuvered as if to avoid the trooper, took a right turn, drove on the shoulder, and pulled over on a bridge across the Minnesota River.

When the trooper approached the vehicle and Riley opened the window, the trooper smelled alcohol. Riley failed a variety of field sobriety tests; a preliminary breath test indicated his alcohol concentration was .18.

The trooper informed Riley that he was going to place him under arrest for driving while intoxicated. When he turned his back on Riley to put the breath-test equipment back into his patrol car, the trooper heard Riley say, "I'm out of here." The trooper turned around and saw Riley on the bridge barrier. The trooper yelled, "No," but Riley jumped. The parties agree that Riley jumped to escape arrest.

The river was swollen and far above flood levels; Riley's body was recovered several months later.

Appellants are Riley's daughter, girlfriend, parents, and sister. Their civil-damage complaint alleges that respondent caused Riley's death. Appellants obtained a postmortem report by psychologist George V. Komaridis, Ph.D., that concluded that Riley's inebriation played "a substantial part in bringing about his decision to jump." Respondent's motion to dismiss the complaint for lack of causation was denied, but, after additional discovery, its motion for summary judgment on the causation issue was granted.

## ISSUE

█ Did the district court err in ruling as a matter of law that the decedent's intoxication was not a proximate cause of his drowning?

## ANALYSIS

"On appeal from summary judgment, we ask two questions: (1) whether there are any genuine issues of material fact, and (2) whether the [district] court[ ] erred in [its] application of the law." *State by Cooper v. French,* 460 N.W.2d 2, 4 (Minn.1990).

A motion for summary judgment shall be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that either party is entitled to a judgment as a matter of law. On appeal, the reviewing court must view the evidence in the light most favorable to the party against whom judgment was granted.

*Fabio v. Bellomo,* 504 N.W.2d 758, 761 (Minn.1993) (citation omitted). When the district court grants summary judgment based on the application of a statute to undisputed facts, the result is a legal con-

clusion, reviewed de novo by the appellate court. *Lefto v. Hoggsbreath Enters., Inc.,* 581 N.W.2d 855, 856 (Minn.1998).

■ The statute at issue here is the Minnesota Civil Damage Act, which provides:

> A spouse, child, parent, guardian, employer, or other person injured in person, property, or means of support, or who incurs other pecuniary loss by an intoxicated person or by the intoxication of another person, has a right of action in the person's own name for all damages sustained against a person who caused the intoxication of that person by illegally selling alcoholic beverages.

Minn.Stat. § 340A.801, subd. 1 (2006). To state a claim under the Act, a plaintiff must prove that the intoxication was a proximate cause of the plaintiff's injuries. *Hartwig v. Loyal Order of Moose, Brainerd Lodge No. 1246,* 253 Minn. 347, 363, 91 N.W.2d 794, 806 (1958). A "direct causal relationship between the intoxication and the injury" is required. *Kryzer v. Champlin Am. Legion No. 600,* 494 N.W.2d 35, 36 (Minn.1992).

■ The sole issue before the district court and this court on appeal is whether there is sufficient evidence of proximate cause for the action to survive summary judgment. Although proximate cause generally is a question of fact for the jury, "where reasonable minds can arrive at only one conclusion," proximate cause becomes a question of law and may be disposed of by summary judgment. *Lubbers v. Anderson,* 539 N.W.2d 398, 402 (Minn. 1995).

*Kryzer* is the controlling caselaw on the issue of proximate cause in a civil-damage action.[1] In *Kryzer,* an intoxicated person injured her wrist while she was being removed from a bar by the bar's employee. 494 N.W.2d at 35. The supreme court reinstated the district court's judgment of dismissal of the action based on the lack of a causal connection between the person's intoxication and her broken wrist. The *Kryzer* court stated that the person's "intoxication may have been the occasion for her ejection from the legion club, but it did not cause either her injury or that sustained by the plaintiff [her husband]." *Id.* at 37. The *Kryzer* court reiterated its rejection of a "but for" test to show proximate cause between the intoxication and the injury. *Id.*

■ In civil-damage cases, courts must distinguish "between the occasion and the cause of an injury." *Id.* For its holding, the *Kryzer* court relied on *Nelson v. Chicago, M. & St. P. Ry. Co.,* 30 Minn. 74, 14 N.W. 360 (1882), *cited with approval in Kryzer,* 494 N.W.2d at 37. There, a railroad's failure to erect a fence may have been the "occasion" for a chain of events leading to an escaped mule running along an unfenced track and eventually breaking its leg. But the mule's act of stepping into a hole, not the railroad's failure to fence, was the direct and natural cause of the mule's broken leg. *Nelson,* 30 Minn. at 76, 14 N.W. at 361. Similarly, in civil-damage actions, a patron's intoxication must be more than the occasion for the injury, it must be the direct cause of the injury.[2]

**1.** Appellants apply language from *Ponticas v. K.M.S. Investments, Inc.,* 331 N.W.2d 907, 915 (Minn.1983) (concluding that owner and operator of apartment building were negligent in failing to investigate apartment manager and failure to investigate was proximate cause of tenant's sexual assault). *Ponticas* is not a civil-damage action and, although decided a decade before *Kryzer,* was not cited in *Kryzer.*

**2.** Appellants argue that the district court failed to consider whether Riley's decision to jump "was *infected by* the level of intoxication he achieved at Twin Town Bowl." Caselaw under the Civil Damage Act does not require

*Kryzer,* 494 N.W.2d at 35. Accordingly, intoxication was not the cause of injuries when an overserved, intoxicated patron encouraged a third party to fight another, who was injured in the fight, *Crea v. Bly,* 298 N.W.2d 66 (Minn.1980), *cited with approval in Kryzer,* 494 N.W.2d at 38, or when an overserved, intoxicated person assaulted the passenger in his car, who then was injured while exiting the vehicle to avoid the assault. *Kunza v. Pantze,* 531 N.W.2d 839 (Minn.1995) (summarily reinstating summary judgment entered in favor of bar on issue of proximate cause and citing *Kryzer* ), *rev'g* 527 N.W.2d 846 (Minn.App.1995).

Appellants argue that Riley's intoxication directly caused his death. The district court concluded, as a matter of law, it did not. We agree with the district court.

Events occurring between Riley's intoxication at Jerry Dutler Bowl and his drowning preclude the conclusion that the intoxication caused the drowning. First, Riley drove 24 miles over the speed limit and was stopped for speeding. No evidence indicates that Riley's speed-limit violation or that the trooper's decision to stop Riley for speeding was directly caused by the intoxication. In fact, the trooper stated that Riley's speed was the only reason he stopped him. Only after these events, did the trooper smell alcohol, test Riley, and then advise him he was under arrest. The parties do not dispute that Riley jumped off the bridge to "escape arrest." [3] Absent evidence that Riley's intoxication was the reason for his speeding, the trooper's stop, or Riley's fleeing arrest, these actions constitute breaks in the chain of causation

between Riley's intoxication and his drowning.

No genuine issue for trial exists "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *DLH, Inc. v. Russ,* 566 N.W.2d 60, 69 (Minn.1997) (alteration in original) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)). "[T]he party resisting summary judgment must do more than rest on mere averments." *Id.* at 71. "[W]hen the nonmoving party bears the burden of proof on an element essential to the nonmoving party's case, the nonmoving party must make a showing sufficient to establish that essential element." *Id.; see also Schroeder v. St. Louis County,* 708 N.W.2d 497, 507 (Minn.2006) (clarifying that "summary judgment is inappropriate if the nonmoving party has the burden of proof on an issue and presents *sufficient evidence* to permit reasonable persons to draw different conclusions" (emphasis in original)); *Nicollet Restoration v. St. Paul,* 533 N.W.2d 845, 848 (Minn.1995) (stating that nonmoving party obligated to present "specific admissible facts" on summary judgment). "[W]hen determining whether a genuine issue of material fact for trial exists, the court is not required to ignore its conclusion that a particular piece of evidence may have no probative value, such that reasonable persons could not draw different conclusions from the evidence presented." *DLH, Inc.,* 566 N.W.2d at 70.

■ In response to respondent's motion for summary judgment, appellants submit-

---

such an inquiry. The sole issue is whether the intoxication proximately caused the injury.

**3.** Appellants contend that it was irrelevant that Riley "jumped to escape, not to commit

suicide." The district court's acceptance of this undisputed fact is supported by the record. The reason for the jump is also relevant to the proximate cause inquiry.

ted a psychologist's report for the proposition that Riley's intoxication was the cause of his drowning. Without ruling on the report's admissibility, the court stated in a footnote that the report was of "minimal evidentiary value."[4] The court noted that the report was "dated three and a half years after Riley's death, and was based on a review of medical and legal records and statements of Riley's family and friends." None of the report's supporting records or statements are part of the record, and the report did not state that the psychologist had ever seen or treated Riley.[5]

Generally, "unless otherwise agreed by the parties, expert opinions are to be presented through expert testimony." *Kelly v. Ellefson*, 712 N.W.2d 759, 771 (Minn.2006) (affirming trial court's exclusion of toxicologist's affidavit at trial); *see* Minn. R. Evid. 702 (allowing testimony, not affidavit, of expert's "specialized knowledge"). This requirement avoids the laundering of inadmissible hearsay evidence through an expert's report. *Kelly*, 712 N.W.2d at 771 (citing *State v. DeShay*, 669 N.W.2d 878, 886 (Minn.2003)). Furthermore, expert psychiatric opinion on the effects of mental illness and intoxication is generally inadmissible because it is within the common knowledge of laypeople. *State v. Griese*, 565 N.W.2d 419, 425 (Minn.1997) (reviewing district-court decision to limit scope of expert-witness testimony about mental condition of defendant charged with first-degree murder). The facts of intoxication and alcohol concentra-

tion may be admissible, but not expert testimony on how intoxication may have impaired a party's capacity to form specific intent. *Id.*

The district court properly assessed the value of the expert report submitted to defeat respondent's summary-judgment motion. As evidence offered to show the effects of Riley's intoxication on his decision to jump, the report had minimal evidentiary value. Absent evidence permitting reasonable persons to conclude that Riley's intoxication caused his drowning, the court properly granted summary judgment for respondent.

## DECISION

The district court did not err in granting summary judgment in appellants' civil-damage action on the essential element of proximate cause when the record contained insufficient probative evidence of a direct causal relationship between the decedent's intoxication and his drowning.

**Affirmed.**

ROSS, Judge (dissenting).

I am persuaded that the majority construes the caselaw on proximate cause too broadly in its decision to affirm summary judgment, and I respectfully dissent. I do not believe that the recent precedent precludes a jury from determining that proximate cause existed on the presently accepted facts. A factfinder could decide that Riley's intoxication so reduced his inhibitions, impaired his judgment, and de-

---

4. Although, in their primary brief, appellants question the propriety of the district court's statement, they claim in their reply brief that respondent cannot address the statement without a notice of review. The district court's statement did not constitute a ruling on the admissibility of the report. As part of its reasoning in its decision to grant summary judgment, the statement by the district court is properly considered by this court without a notice of review.

5. Appellants' counsel argued at the summary-judgment hearing that Dr. Komaridis once saw Riley professionally, but this fact does not appear in the record. The report itself states only that Riley was seen at the same clinic 11 years earlier.

luded his perception that he chose imprudently to step from a bridge into a rushing river based on the misperception that he could swim safely to its bank. I therefore would reverse and remand for a trial.

The purposes of the Civil Damage Act are to protect public health, safety, and welfare by carefully regulating liquor distribution, to penalize dram shops for illegal liquor sales, and to provide a remedy for innocent third persons injured "as a result of another's intoxication." *Englund v. MN CA Partners/MN Joint Ventures,* 555 N.W.2d 328, 332 (Minn.App.1996), *aff'd* 565 N.W.2d 433 (Minn.1997). Liability under the act depends only on whether an illegal sale of alcohol intoxicated a person and whether that intoxication caused injury. *Rambaum v. Swisher,* 435 N.W.2d 19, 21 (Minn.1989) (stating elements for establishing dram-shop liability). In other words, the focus is on whether the intoxication impaired the patron's physical or mental faculties so that his injurious actions can be said to result from the over-service and excessive consumption of alcoholic beverages. The caselaw that defines proximate cause does not invite courts to decide as a matter of law that proximate cause is lacking when, as here, the facts suggest a direct link between the intoxication and the overserved patron's injurious act. The majority's proximate-cause holding looks to factors that contributed to the traffic stop (which caused no injury) rather than to the single factor that allegedly contributed to the decision to jump— arguably, intoxication.

These essential facts are accepted for our summary-judgment analysis: A Jerry Dutler Bowl employee unlawfully served Michael Riley alcoholic beverages. The illegal sale intoxicated Riley at nearly twice the legal threshold at the time. A trooper stopped Riley's vehicle for speeding soon after he left Jerry Dutler Bowl.

The trooper told Riley that he would be arrested for driving while intoxicated, and Riley calmly mounted and jumped from the highway-bridge railing into the fast-flowing river to escape arrest, announcing, "I'm out of here." Someone found his body months later.

The majority rests its decision on three cases. A uniform plot precipitated dismissal as a matter of law in each of these cases: some third person, uninfluenced by the dram shop's service of alcohol, decided to engage in the act that directly caused injury. But this uniform plot is entirely absent from the case before the court today. This case therefore calls for a different result.

In *Kryzer,* a bouncer tossed a disruptive, intoxicated patron from a bar, causing the patron injuries. *Kryzer v. Champlin Am. Legion No. 600,* 494 N.W.2d 35, 36 (Minn. 1992). In *Kunza,* a passenger in a moving van decided to leap from the vehicle to evade abuse by her intoxicated husband, causing her injuries. *Kunza v. Pantze,* 527 N.W.2d 846, 847–48 (Minn.App.1995), *rev'd* 531 N.W.2d 839 (Minn.1995). And in *Crea,* a man attacked the plaintiff after an instigating, intoxicated woman encouraged him to do so. *Crea v. Bly,* 298 N.W.2d 66, 66 (Minn.1980). A fourth case also contains this plot. In *Weber,* a police officer decided to chase and apprehend a belligerent, intoxicated minor, causing the officer injuries. *Weber v. Au,* 512 N.W.2d 348, 349 (Minn.App.1994). In each case the injured person sued under a dram-shop theory of liability. And in each case, the claimant lost, as a matter of law, for lack of proximate cause.

The reasons the Minnesota appellate courts rejected these claims as a matter of law highlight that dram-shop liability must rest on intoxication-induced action that causes injury, not on a third-party's reaction to the intoxicated person, which in

turn causes the injury. These cases stand for the unremarkable proposition that the merely responsive injurious action by a third person, as a matter of law, is too attenuated to constitute proximate cause because the action is not a direct product of the patron's intoxication. In *Kryzer,* the supreme court emphasized that "[t]he complaint alleges only that it was an act of a club employee in ejecting her which caused the injury." *Kryzer,* 494 N.W.2d at 37. In *Kunza,* the supreme court summarily reinstated summary judgment after this court reversed the district court, relying expressly on *Kryzer.* *Kunza,* 531 N.W.2d at 839. In *Crea,* the court explained that "[w]hile the duties of dram shops to the public are and should be onerous, they do not extend to anticipating and protecting the public from the excesses of third parties beguiled into committing assaults on innocent victims by the importuning of intoxicated ... patrons." *Crea,* 298 N.W.2d at 66. And in *Weber,* this court explained that "Weber has made no allegation that the [minor's] intoxication had any role in the injury Weber sustained when he apprehended the minor after chasing him on foot." *Weber,* 512 N.W.2d at 350.

In sharp contrast to the clear pattern of merely responsive actions by third parties addressed in these dismissed cases, the appellants here rely on a traditional dram-shop theory, focusing directly on action taken by Riley that caused injury. That is, rather than resting their claim on injuries that resulted from a third-party's reaction to an intoxicated patron's conduct, the appellants contend that Jerry Dutler Bowl served alcohol unlawfully, causing Riley's intoxication, and that this intoxication itself caused Riley to engage in the injurious conduct for which the bar is liable. Whether Riley's reckless decision to plunge into the river resulted from his intoxication or from some other motivation

is precisely the type of factual consideration that juries have made in time-honored dram-shop cases. *See, e.g., Kvanli v. Village of Watson,* 272 Minn. 481, 485, 139 N.W.2d 275, 278 (1965) (holding that "[t]he jury could infer that lack of judgment or perception resulting from intoxication produced by the consumption of the liquor was a proximate cause of the events which brought about the injury"); *Murphy v. Hennen,* 264 Minn. 457, 461, 119 N.W.2d 489, 492 (1963) (holding that sufficient evidence supported jury verdict holding bar liable when intoxicated patron's vehicle sideswiped one vehicle and later collided with vehicle plaintiff's daughter was driving); *Fette v. Peterson,* 404 N.W.2d 862, 864 (Minn.App.1987) (affirming jury verdict finding bar liable when intoxicated person mistook stop sign for green light and struck another vehicle), *review denied* (Minn. June 26, 1987); *Danielson v. Johnson,* 366 N.W.2d 309, 313 (Minn.App.1985) (holding that district court did not err by submitting to jury question of liquor stores' liability in negligence action against other parties after settlement with stores because "there is evidence for the jury's findings that the liquor stores made illegal sales to minors, that such sales proximately contributed to [the defendant's] intoxication, and that [his] intoxication was the proximate cause of the [car] collision"), *review denied* (Minn. June 24, 1985).

This case does not at all fit into the *Kryzer* line of dismissible cases. It would if, for example, Riley's intoxication contributed to violent conduct by Riley during the traffic stop and the trooper, in response, had attempted to seize Riley and unintentionally (or even intentionally) pushed him into the river. In that situation it would be accurate to hold that, as a matter of law, Riley's intoxication is the occasion for but not the cause of the injury.

But the majority instead places undue emphasis on the traffic stop and Riley's attempt to avoid arrest. It emphasizes that "[n]o evidence indicates that Riley's speed-limit violation or that the trooper's decision to stop Riley for speeding was directly caused by the intoxication." The majority therefore concludes that the speeding, stop, and attempted escape "constitute breaks in the chain of causation between Riley's intoxication and his drowning." In doing so, the majority misses that Riley's allegedly clouded misperception that he could safely enter into and swim out of the river is the real focus of the proximate-cause analysis. In my opinion, it is this distraction concerning the circumstantial trigger to Riley's decision to act on his misperception that takes the majority astray and leads it to see distance in the "chain of causation between Riley's intoxication and his drowning." But the only causal link between Riley's intoxication and his drowning is his plunge, which his survivors insist was based on a misperception caused by the alcohol that Jerry Dutler Bowl overserved Riley. The attendant circumstances within these material facts should be of little consequence. What if Riley had stopped on the bridge to fix a flat tire, or to pick up a hitchhiker, or to avoid colliding with a hallucination? The reason for his presence on the bridge does not bear on whether his intoxication caused his injuries. And what if, in any of these circumstances, a passing stranger had dared him to jump into the river, or had paid him to do so? Or what if he had merely *imagined* that a police officer was attempting to arrest him?

I view these hypothetical scenarios as I view the actual traffic stop and arrest: they are incidental stimulants that might spark an intoxicated person to consider acting on a dangerous alcohol-induced misperception. Whether the trooper's lawful actions would have led a sober Riley to jump should doubtless be of significant concern to the jury. But I do not believe that these incidental triggering circumstances provide a basis to determine proximate cause as a matter of law when it is alleged, and the facts arguably support, that intoxication directly caused the injurious action. I therefore would not determine proximate cause as a matter of law based on the stop, on the trooper's attempt to arrest Riley, or on Riley's attempt to avoid arrest.

I add a concern that the majority's analysis and conclusion seem to suggest that a dram shop is not liable when the intoxicated patron becomes a driver who violates the law, and the violation then leads to the injury. This suggestion inadvertently invites the defense of superseding causation, which precedent has barred in dram-shop cases. The *Fette* court rejected the defense, explaining that "[i]f . . . the driving conduct of [the intoxicated patron] after he left the bar was a superseding cause of the accident, then every bar would have superseding cause as a defense, and the Dram Shop Act would be rendered ineffective." *Fette*, 404 N.W.2d at 865 (quotation omitted). If Riley's illegal driving conduct and illegal flight can prevent liability for the injury that resulted from his alleged drunken misperception, the concern expressed in *Fette* has not been accounted for here. And the law of dram-shop liability becomes much less clear.

Riley's leap unquestionably caused the injury, and the appellants maintain that its proximate cause was Riley's allegedly inebriated misunderstanding that he could launch himself into the river safely. The jury should decide whether, as a matter of fact, intoxication actually contributed to Riley's decision to take his tragic leap. It could decide this with or without expert testimony because, as the majority points out, the effect of intoxication is generally

within the common knowledge of laypeople. I would therefore reverse the district court's entry of summary judgment for Jerry Dutler Bowl.