WILSON STORAGE & TRANSFER COMPANY v. WILLIAM
GEURKINK AND ANOTHER, COPARTNERS d.b.a. SIOUX
CENTER LIVESTOCK SALES COMPANY, AND OTHERS.
E. W. WYLIE COMPANY, THIRD-PARTY
DEFENDANT, APPELLANT.[1]

April 15, 1954.

No. 36,192.

[1]Reported in 64 N. W. (2d) 9.

*Mahoney & Mahoney* and *Cragg & Barnett,* for appellant.
*Wilson, Blethen, Ogle & Gage,* for plaintiff-respondent.
*Sexton, Tyrrell & Jardine,* for defendants-respondents.

62

DELL, CHIEF JUSTICE.

This is an appeal from an order denying the alternative motion of the appellant, E. W. Wylie Company, for judgment notwithstanding the verdicts or a new trial.

The plaintiff instituted this action on November 10, 1952, against the defendants, William Geurkink and Elmer H. Den Herder, copartners doing business under the name of Sioux Center Livestock Sales Company, William Geurkink, individually, and Gysbert Kuyper, to recover damages for the partial destruction of one of its tractor-trailer units as a result of a collision which occurred on February 18, 1952. The original complaint alleged that the collision and the damage to the tractor-trailer unit were proximately caused because of the negligence of Gysbert Kuyper, the driver of the defendants' truck. Defendants answered denying negligence and alleged that the collision was due to the negligence of the plaintiff and others not subject to or under their control.

On January 17, 1953, the defendants moved the court for permission to bring in the E. W. Wylie Company, hereinafter referred to as Wylie, as a third-party defendant. Permission was granted, and on January 22 a third-party complaint was served upon Wylie seeking contribution from it to the extent of one-half of the amount recovered should there be a recovery by the plaintiff against the defendants. The plaintiff, pursuant to permission granted by the court, served an amended complaint in which Wylie was made an additional defendant. The amended complaint charged Wylie with negligence and judgment was demanded by plaintiff against all of the defendants. In its answer to the third-party complaint, Wylie denied that it was negligent and alleged that plaintiff's damages were caused by the negligence of the defendants. In its answer to plaintiff's amended complaint, Wylie alleged plaintiff's contributory negligence and also that plaintiff's damages were caused by the negligence of parties over whom Wylie exercised no control.

At a pretrial conference held on May 16, 1953, defendants were granted permission, upon motion, to serve a cross-complaint against Wylie so as to seek recovery from it for the damages sustained to

defendants' truck and cargo. The cross-complaint was served and the pleadings were thereafter closed.

The case came on for trial on June 23, 1953, and the trial resulted in a verdict in favor of the plaintiff and against Wylie alone for the sum of $2,315.03 and a verdict in favor of the defendants, third-party plaintiffs, against Wylie for the sum of $3,200.

■■■ Wylie claims that the prevailing parties failed to present sufficient evidence to make a fact question for the jury as to its negligence. In stating the evidence on this issue we shall do so in the light most favorable to the verdict in accordance with the settled law. Plaintiff's unit was proceeding in a southerly direction on highway No. 169, a two-lane concrete-surfaced road. It was snowing and blowing at the time but the road had not appreciably drifted. At approximately 11:30 p. m. at a point about four miles south of LeSueur, Minnesota, Warren Olson, the driver of plaintiff's unit, sighted two vehicles approaching him from the south. One of the vehicles, which was later identified as a Wylie car transport, passed the other vehicle, which turned out to be defendants' cattle truck driven by Gysbert Kuyper, and then turned back to its own side of the road. Thereafter, defendants' truck suddenly came across the highway onto plaintiff's side of the road. Olson, in an effort to avoid a collision, turned to his right and got out onto the shoulder with his right wheels. His effort to avoid an accident was unsuccessful, and plaintiff's and defendants' vehicles collided.

Kuyper claimed that the Wylie vehicle which passed him "when he got about half way in front of me cut in sharp" and forced him to pull over onto the shoulder and apply his brakes; that he then struck a "splashout" or drain which caused the cattle to "move back and forth" and the truck to sway; and that he thereupon lost control of the truck and in order to avoid going down into the ditch "pulled back" to the left, whereupon the collision between plaintiff's and defendants' vehicles occurred on plaintiff's side of the road. The testimony of Kuyper was corroborated in many of the details by that of Anton Olseth who was riding with Kuyper in the defendants' truck.

There was evidence from which the jury could find that when the car transport passed defendants' truck it was traveling 60 miles an hour; that its driver gave no warning of its intention to pass; and that in passing it "kicked up so much snow it was absolutely impossible to see anything." The evidence justified the jury in finding that the vehicles of plaintiff and defendants were, prior to the accident, proceeding at a reasonable rate of speed of about 25 to 30 miles an hour on their own respective sides of the road. M. S. A. 169.18, subd. 3(1), provides:

"The driver of a vehicle overtaking another vehicle proceeding in the same direction shall pass to the left thereof at a safe distance and shall not again drive to the right side of the roadway until safely clear of the overtaken vehicle;"

Wylie claims that none of its car transports, at the time of the accident, were in the area where the accident occurred and that none of its vehicles passed defendants upon the highway. In support of this defense it called its dispatcher as a witness. He testified that Wylie had about 120 transports at the time of the accident; that while the company does not specify the routes which the drivers of their transports must take, nevertheless, he knew the routes which are best suited for their needs. He testified that in checking the company records he found that there were five drivers who could conceivably have used highway No. 169. After naming those drivers, he indicated that none of them, according to deductions made from his records, would have been in that area at the time of the accident. It is noticeable, however, that the two drivers most likely to have been upon the highway at the time of the accident were not called as witnesses by Wylie. Opposed to this evidence was the testimony of three witnesses who positively identified the vehicle as a Wylie car transport. Olseth, the passenger in defendants' truck, testified that when defendants' truck passed through St. Peter he saw a car transport double parked on the street in the vicinity of a cafe and that the name "Wylie" was on the side of the tractor door, and he identified that transport as the one which passed the defendants' truck and cut in ahead of it at the time of the accident. Kuyper, the

driver of defendants' truck, testified that as the transport passed and cut in front of him he observed the name "Wylie, St. Paul, Minn." on the door of the tractor. Olson, the driver of plaintiff's unit, identified the transport as a Wylie vehicle by a series of dis-tinguishing cab lights known to him which he testified were carried only by Wylie vehicles. We need not comment upon the evidence contrary to the foregoing facts. The jury, by its verdict, rejected it. Clearly, whether the driver of the car transport was negligent[2] and whether the transport was a Wylie vehicle presented issues of fact for the jury.

During the course of the trial Wylie offered in evidence the entire district court file in this case. Upon objection, its admission was refused and that ruling is assigned as error. Wylie claims that the file should have been received in evidence for the purpose of impeachment; to show inconsistencies; and to establish-the assertion of stale claims by the parties. It is claimed that the procedure followed in bringing Wylie into the lawsuit does not indicate the normal reactions of wronged persons.

It may be said in general that when parties allege matters of fact in their pleadings these pleadings may be offered in evidence against such parties as admissions of the facts so alleged or for the purposes of impeachment.[3] While this court has followed this rule, there has been some confusion in our earlier opinions. The rule, however, has now been clearly stated in the recent case of Carlson v. Fredsall, 228 Minn. 461, 37 N. W. (2d) 744. In that case plaintiff was injured in an accident involving an automobile and a streetcar. Plaintiff instituted an action against the driver of the automobile and its owner. The complaint alleged that the accident was caused *solely* by the negligence of those defendants. Later the complaint was amended so as to include, as defendants, the streetcar company and its motorman. This court, in holding that the original complaint was admissible in evidence, speaking through Mr. Justice Knutson stated (228 Minn. 473, 37 N. W. [2d] 751):

[2]Mueller v. Dewey, 159 Minn. 173, 198 N. W. 428.

[3]Carlson v. Fredsall, 228 Minn. 461, 37 N. W. (2d) 744; 3 Jones, Commentaries on Evidence (2 ed.) § 993; 4 Wigmore, Evidence (3 ed.) § 1067.

"We conclude that the original complaint in this case was admissible as an admission and for impeachment purposes and that it was error to exclude the proof offered, for which there must be a new trial. The allegations in the original complaint are so entirely inconsistent with plaintiff's present claims that if the jury believed that plaintiff's original complaint stated the true version of the accident it would obviously relieve the streetcar company and its motorman from all liability. Under these circumstances, it was highly prejudicial to exclude the offered evidence, which requires a new trial."

The original complaint in the action now before us, which Wylie desired to place in evidence as an admission and for impeachment purposes, contained the following allegation:

"That all of the foregoing damage was proximately caused by the negligence of the defendants herein."

There is a distinct and substantial difference between an allegation stating that the accident was caused solely by defendants' negligence and one stating that defendants' negligence was the proximate cause of all the damage. The latter is not an allegation that the defendants' negligence is the sole cause of the damage. A party whose negligence proximately contributes to produce a collision is liable for *all* of the damages resulting from the collision irrespective of the degree of his negligence when compared with the negligence of another party who also proximately contributes to bring about the collision. The rule that codefendants are jointly and severally liable to the plaintiff for all damage sustained in an accident is thoroughly established in the law of this state.[4] It is not inconsistent to say, upon learning that another party has played a vital part in the accident, that the negligence of said party is also a proximate cause of the damage.[5]

It is quite obvious, from the testimony of Olson, the driver of plaintiff's unit, that plaintiff was not aware of Wylie's part in this

---

[4]Nees v. Minneapolis St. Ry. Co. 218 Minn. 532, 16 N. W. (2d) 758; 4 Dunnell, Dig. & Supp. § 7006.

[5]See, 4 Dunnell, Dig. & Supp. §§ 7006 and 7007.

accident at the time that it commenced the action against the defendants. The testimony of Olson standing alone would not justify a verdict against Wylie. Further evidence that plaintiff did not have knowledge of Wylie's part in the accident is plaintiff's prompt action in amending its complaint and naming Wylie as an additional defendant after Wylie was brought in as a third-party defendant by the defendants. This action was instituted after the recent adoption of the rules of civil procedure which permit liberal amendments to pleadings and the joinder of additional parties to avoid extended litigation. Under the circumstances here the record fails to show that plaintiff has acted inconsistently or materially delayed in asserting its claim against Wylie. It responded to the developments of the action by expeditiously applying the procedural devices provided under the new rules.

The defendants, in answer to the original complaint, alleged that plaintiff's damages were caused by the negligence of the plaintiff and negligence on the part of others not under their control. In their third-party complaint, alleging negligence on the part of Wylie, defendants sought contribution from Wylie in the event that plaintiff recovered damages against the defendants. In their cross-complaint for the recovery of damages to its truck, defendants again alleged negligence against Wylie. The defendants have at all times consistently maintained and claimed that the conduct of Wylie was a proximate cause of the accident. There is no inconsistency to be found in any of the pleadings of the defendants, and its delay of approximately four months in asking affirmative relief from Wylie for the damage to its truck cannot be characterized as the assertion of a stale claim in the light of its consistent claim made at all times that Wylie was responsible for the accident.

There is another cogent reason why the trial court's ruling was right. While the file has not been returned to this court, the record shows that it necessarily contained numerous documents such as motions, affidavits, orders, and amended orders besides numerous pleadings. Wylie's pleadings and the orders of the court were not admissible, and there was no showing that any of the motions or affidavits were pertinent to the offer either. No effort was made by

Wylie to segregate the file and offer in evidence only those pleadings which it claimed contained inconsistencies or showed the assertion of stale claims. It is a well-settled rule of law that where a general offer of evidence is made and some of the evidence is material and admissible and other parts of it are immaterial or inadmissible the whole may be rejected in the absence of a specific offer of the admissible portion.[6]

■ Counsel for Wylie claims that he was limited by the court in his argument to the jury and was not allowed to draw any inferences from the dates, sequences, claims or lack thereof to be found in the procedural history of the case; that he was thereby deprived of one of his most potent arguments; and that this constituted prejudicial error. The record before us does not contain counsel's argument to the jury nor any rulings by the court limiting such argument. While the trial was in progress and before the parties had rested, the court expressly refused to rule on what argument could be made to the jury, stating that it would reserve its ruling for further discussion. At the close of the court's charge the record contains an exception by counsel for Wylie to the limitation placed upon his argument by the court. Counsel for plaintiff and defendants contend that no limitation was placed upon the argument of counsel for Wylie. Without a showing of what argument counsel did make and in what manner the court restricted his argument, there is nothing before us for review.[7]

■ The trial court, in its instructions to the jury, read the portions of M. S. A. 169.14 as set forth in the footnote.[8] This Wylie

[6]Antel v. St. Paul City Ry. Co. 133 Minn. 156, 157 N. W. 1073; Boos v. Minneapolis, St. P. & S. S. M. Ry. Co. 127 Minn. 381, 149 N. W. 660; 1 Wigmore, Evidence (3 ed.) § 17; 6 Dunnell, Dig. & Supp. § 9717.

[7]1 Dunnell, Dig. (3 ed.) § 350.

[8]"No person shall drive a vehicle on the highway at a speed which is greater than reasonable and prudent under the conditions, and having regard to the actual and potential hazards existing. In every event speed shall be so restricted as may be necessary to avoid colliding with any vehicle, or other conveyance on the highway, in compliance with legal requirements and the duty of all persons to use due care. The driver of any vehicle shall, consistent with the requirements, drive at an appropriate reduced speed

assigns as error although in its brief it admits "It is true that there is evidence in the record of what might be determined by the jury to be excessive speed on the part of the passing vehicle." That, under the circumstances here, Wylie's speed of 60 miles an hour may well have been a contributing cause to the happening of the accident seems too obvious to require discussion.[9] The instruction was properly given.

■ At a pretrial conference held on May 16, 1953, defendants moved the court for an order permitting them to serve a cross-complaint against Wylie to enable them to recover for the damages sustained to their truck and cargo. The motion was granted and the case was, on that day, set for trial for June 23. The cross-complaint was promptly served. Wylie concedes that the allowance of the cross-complaint was addressed to the discretion of the court. It contends, however, that the court abused its discretion in permitting the cross-complaint to be served at that late date. At the trial it introduced no evidence to dispute the items of damages claimed by the defendants. On this appeal the amount of the verdicts is not questioned. The only new issue raised by the cross-complaint was the damage to defendants' truck and cargo. With almost one month to prepare to meet that issue, Wylie is in no position to complain nor is there anything to indicate that it was in any way prejudiced.

Affirmed.

---

when special hazards exist with regard to pedestrians or other traffic or by reason of weather or highway conditions."

[9]See, Mueller v. Dewey, 159 Minn. 173, 198 N. W. 428.