355 S.E.2d 924

**Betty Ann BAYLOR, Administratrix of the Estate of Leslie H. Baylor, Deceased**

**v.**

**NORFOLK AND WESTERN RAILWAY CO., et al.**

**No. 16958.**

Supreme Court of Appeals of West Virginia.

April 1, 1987.

---

Route 9 in Jefferson County. At the intersection of Route 9 and the track of the defendant Norfolk and Western Railway, on the edge of the town of Ranson, they were hit by defendant's train. Both Mr. Baylor and Mr. Twyman were killed. Postmortem blood alcohol tests revealed that Mr. Baylor's blood alcohol was 0.16 and Mr. Twyman's was 0.19.

Mr. Baylor's estate sued the railroad for negligently causing his death. The plaintiff attempted to prove that: the automatic signaling device at the crossing was not properly functioning; the train was moving at an excessive rate of speed; and, the driver's view of the track was obscured by brush. Although there was some evidence favorable to plaintiff about all three of these allegations, the weight of the evidence was that: the lights were flashing; the train was sounding its horn and bell; there was a long, unobscured view down the track from the crossing; and, the train was moving at a reasonable speed. Furthermore, the trial court excluded from the jury's consideration both Mr. Twyman's and Mr. Baylor's level of intoxication—a ruling that has prompted a cross-appeal by the railroad.

After a lengthy trial the jury was provided with a special verdict form to take to their deliberations. That form said:

We the jury, find the following special verdicts on the following questions submitted to us:

(1) Was George R. Twyman guilty of negligence which was the proximate cause of the accident?

Yes__ No__

(2) Was Leslie H. Baylor guilty of negligence which was the proximate cause of the accident?

Yes__ No__

(3) Was the defendant Norfolk and Western Railway Company guilty of negligence which was a proximate cause of the accident?

Yes__ No__

(4) If you have answered "yes" to (2) or more of the following questions, you are then required to apportion the negligence

Nichols & Skinner, John C. Skinner, Jr., Charles Town, for appellant.

Martin & Seibert, Clarence E. Martin, III, Martinsburg, for appellees.

NEELY, Justice:

On 14 March 1976 George Twyman and Leslie Baylor became severely intoxicated. They then got into Mr. Baylor's car with Mr. Twyman driving and proceeded down

among those found by you to have been guilty of negligence which was a proximate cause of the accident or his injuries. If you found anyone not guilty of negligence which was a proximate cause of this accident, that one would be assigned (0%). In any event, the apportionment must total (100%).

What percentage of negligence do you assign to each? George R. Twyman ____% Leslie H. Baylor ____% N & W Railway Co. ____%, total 100%.

The jury deliberated, but when they returned with their verdict they scratched out question 3 and referred the court to a handwritten statement on the back of page 2. That handwritten statement said:

(3) Was the defendant Norfolk and Western Railway Company guilty of negligence which was not the *primary* cause of the accident?

Yes _X_ No ___.

The jury answered their redrafted question 3 "yes," and then proceeded to assess Mr. Baylor's negligence at 0 percent, Mr. Twyman's negligence at 90%, and the Norfolk and Western's negligence at 10%.

The trial court concluded that this was an improper jury verdict and reinstructed the jury as follows:

Ladies and gentlemen of the jury, it is impossible for the Court to accept this verdict form. I must ask you to repair to your chambers and make a determination as to whether or not the Defendant, Norfolk and Western Railway Company, was guilty of negligence which was *the* proximate cause of the accident. I will send you back with a true photocopy of the original verdict form and ask you to complete it, if you can.

Within 10 minutes after being instructed, the jury returned with a second verdict which found as follows:

| | |
|---|---|
| Baylor's Negligence | 0% |
| Twyman's Negligence | 100% |
| Norfolk & Western Railway Company's Negligence | 0% |
| Total Damages | $146,887.50 |

Over the strenuous objections of the plaintiff, the trial court accepted the second verdict and entered judgment in favor of the defendant Norfolk and Western Railway Company. The plaintiff below now appeals asserting five assignments of error. We affirm.

### I

■ The appellant's primary complaint is that the trial court should have entered judgment on the original jury verdict and apportioned 10 percent of the negligence to Norfolk and Western. We agree with the trial court, however. Given the way the jury rewrote the court's third special interrogatory, the jury did not believe that Norfolk and Western was in any way responsible for the accident. A fair reading of what the jury said in its handwritten statement was that the jury believed that the railroad behaved in a generally negligent way, but that its general lack of care had nothing to do with this particular accident. Consequently, the trial court was correct to reinstruct the jury and ask them to clarify their position concerning whether they had found that the Norfolk and Western Railway was guilty of negligence that, in whole or in part, proximately caused the accident.

Obviously, the jury could not bring themselves to find that the railroad's negligence caused the accident, which meant that they had no choice but to find for the defendant. Although appellant argues that, perhaps, the jury did not entirely understand what the court was asking them, there were no objections to the court's instructions by appellant's counsel and it is obvious from the totality of the circumstances that the jury understood what was being asked.

### II

During the trial appellant sought to introduce the railroad's response to plaintiff's interrogatory 13 which asked a number of questions concerning the speed recorder on the train at the time of the accident. The answer to interrogatory 13 indicated that the speed recorder tape had been retained for seven days and then destroyed. The appellant could have called as witnesses any of the railroad's officers who knew about the destruction of the tape and could have asked the circumstances surrounding its destruction. However, it

was within the discretion of the trial court to refuse to admit plaintiff's interrogatory 13 and defendant's answer to that interrogatory into evidence.

■ The answer to the interrogatory was not prepared with a view to its introduction at trial, but rather only with a view to providing the appellant with information to prepare a case. Therefore, it was not an abuse of the trial court's discretion under Rule 403, *W.Va. Rules of Evidence*, to conclude that the prejudicial effect of interrogatory 13 outweighed its probative value and that evidence concerning the destruction of the tape should be admitted in a non-prejudicial way by calling one of defendant's officers.

### III

The appellant next complains of the trial court's failure to give plaintiff's instruction number 1, which said:

The court instructs the jury that the defendant railroad has the right to shove cars over public crossings provided proper precautions are taken for the safety of travelers using the crossing. It is common knowledge that shoving cars is peculiarly dangerous and therefore creates a duty of unusual care on the part of the railroad. There should be abundant warnings not only by visual signals of bell and whistle but there should be a flagman near the track or a watchman on the nearest approaching car to warn travelers who are near.

If you believe by a preponderance of the evidence that the railroad failed to provide such warnings and the failure to give such warnings was a proximate cause of the injuries to and death of Leslie Howard Baylor then you may find in favor of the plaintiff and against the defendant railroad.

■ In support of this instruction appellant cites *Bowles v. Chesapeake & Ohio Railway Co.*, 61 W.Va. 272, 51 S.E. 131 (1907). Although this language is found in *Bowles*, it does not apply to the facts of the case before us. In *Bowles* the railroad was moving cars on a dark night over a crossing that had no mechanical warnings whatsoever. In the case before us, the train was moving at between 35 and 50 miles per hour along a mainline, in broad daylight, across an intersection that had red flashing warning lights and a long, unobstructed view. The only testimony in the record concerning the possible use of a flagman on the front of the train was to the effect that if there had been a flagman he also would have been killed instantly. Consequently, we find no error in the trial court's refusal to give plaintiff's instruction number 1.

### IV

Finally, appellant assigns two errors concerning the court's failure to allow the introduction of evidence. First, the court declined to admit a photograph that showed the automobile in which appellant's decedent was traveling after the accident. Second, the court refused to permit testimony concerning other fatal accidents at the same railroad crossing within two years of appellant's decedent's fatal collision.

■ Appellant argues that "the jury could draw reasonable inferences regarding the speed of the train at the time of impact" from the photograph. We disagree. The photograph itself presented no evidence of value to a lay jury. There was no question that appellant's decedent was a passenger in the car; the car was hit by a train; and the appellant's decedent died as a result of the collision. Although the photograph itself might have been of value to an expert on collisions concerning the speed of the train, it would not have helped the jury.

■ Evidence that other collisions occurred at the same crossing, standing alone, also was not relevant to the issue of whether the collision in question was caused by the defendant's negligence. The primary question that the jury had to answer in the case before us was whether at the time of the accident in question the railroad's lights were flashing, the train

was sounding its horn, and the view down the track was sufficiently unobstructed to give motorists a clear view of impending danger. The mere fact that other accidents had occurred at that same crossing within two years, without more, had no bearing whatsoever on the issues being tried.

Accordingly, for the reasons set forth above the judgment of the Circuit Court of Jefferson County is affirmed.

Affirmed.