Kevin KELLY, as Trustee for the heirs and next-of-kin of Kelly Ann Kelly, et al., Appellants,

v.

Jason ELLEFSON, Respondent,

Steven Eidemiller, Defendant,

Supreme Transport Services, L.L.C., et al., Respondents,

and

Lido's Italian Market Café & Bar, Defendant.

No. A04–615.

Supreme Court of Minnesota.

April 27, 2006.

Patrick J. Sauter, Stephen P. Watters, Paula D. Vraa, Brian H. Sanda, Rider Bennett, LLP, Minneapolis, MN, for Appellant.

Emilio R. Giuliani, Nicholas L. Klehr, Labore, Giuliani, Cosgriff & Viltoft, Ltd., Hopkins, MN, for Respondent Ellefson.

Katherine L. MacKinnon, St. Louis Park, MN, James F. Roegge, Katherine A. McBride, Meagher & Geer, PLLP, Minneapolis, MN, for Respondents Supreme Trans., et al.

## OPINION

ANDERSON, PAUL H., Justice.

Appellant Kevin Kelly appeals a decision by the Minnesota Court of Appeals that his amended complaint, answers to interrogatories, and expert's affidavit were admissible as admissions of a party-opponent in his suit for the wrongful death of his wife. Kevin Kelly's wife, Kelly Ann Kelly, died in a collision between a semi-tractor trailer operated by a driver for Supreme Transport Services, L.L.C. and a pickup truck driven by Jason Ellefson in which Kelly Ann Kelly was a passenger. As a result of this accident, Kevin Kelly commenced a cause of action against three drivers and a bar. Before the jury was sworn, Kevin Kelly entered into *Pierringer* settlements with Steve Eidemiller, one of the drivers, and Lido's Café, the bar. Kevin Kelly then went to trial with respect to the remaining drivers. A Ramsey County jury found respondents Supreme Transport Services, L.L.C., David and Diana White, and D.L. Enterprises (collectively Supreme Transport) 60% at fault and the other driver, respondent Ellefson, 40% at fault for the death of Kelly Ann Kelly. Supreme Transport moved for a new trial on the issue of liability, claiming

numerous evidentiary and procedural errors. The district court denied Supreme Transport's motion for a new trial.

Supreme Transport appealed, asserting numerous alleged errors, including the district court's exclusion of all evidence of Lido's fault. In particular, Supreme Transport argued that Kevin Kelly's amended complaint, answers to interrogatories, and expert's affidavit should have been admitted as party admissions. The Minnesota Court of Appeals concluded that several errors had been committed, and reversed and remanded for a new trial on the basis of the errors, including the district court's exclusion of Kevin Kelly's amended complaint, answers to interrogatories, and expert's affidavit. The court of appeals held that the amended complaint, answers to interrogatories, and expert's affidavit should have been admitted as party admissions to show the fault of Kelly Ann Kelly. Kevin Kelly filed a petition for review, which we granted solely on the issue of the admissibility of the amended complaint, answers to interrogatories, and expert's affidavit. We reverse.

On the night she died in an automobile accident, Kelly Ann Kelly joined her childhood friend, Katherine Martinson, and other friends and coworkers at Lido's Café, a restaurant and bar located in the city of Roseville. There were 15–20 people in the group. Most of the people arrived after work around 5:00 p.m. and left by 7:00 or 7:30 p.m. Six people remained until approximately 8:00 p.m. These six people were Kelly Ann Kelly, Martinson, Jason Ellefson, Steve Eidemiller, Corbin Ellefson, and Erica Eastep.

Just after 8:00 p.m., this group of six left Lido's in three vehicles, intending to meet at another Roseville bar. Kelly Ann Kelly, Martinson, and Corbin rode with Ellefson in his pickup truck. Ellefson drove, Kelly Ann Kelly rode in the front passenger seat, and Martinson and Corbin rode in the back seat. Eidemiller and Eastep each drove separately. The three vehicles proceeded westbound on Ramsey County Road C, which is a four-lane road with a speed limit of 45 miles per hour. As the three vehicles approached Fairview Avenue, they were lined up in the left westbound lane with Eidemiller leading, followed by Eastep and then Ellefson.

By the time the vehicles stopped at a traffic light at Fairview Avenue, Ellefson had moved his pickup truck into the right westbound lane and was adjacent to Eidemiller's vehicle. There was conflicting testimony about whether Ellefson and Eidemiller exchanged gestures while waiting for the traffic light to turn green, and whether they began to race as they proceeded through the intersection. Ellefson and Eidemiller denied that they were racing. Eidemiller testified that he was driving at approximately 50 miles per hour. Ellefson testified that he was driving between 50 and 55 miles per hour. Eastep testified that Ellefson and Eidemiller "took off from the stoplight more quickly than [she] did," but that they did not appear to be racing. But Martinson testified that Ellefson and Eidemiller communicated through hand gestures while stopped at the traffic light, and when the traffic light turned green, both vehicles accelerated to about 60 miles per hour. Whether racing or not, when the traffic light turned green, the three vehicles continued westbound with Eidemiller and Eastep in the left westbound lane and Ellefson in the right westbound lane.

All three drivers intended to make a left turn at Cleveland Avenue, which is approximately one-half mile west of Fairview Avenue. In anticipation of this turn, Ellefson looked over his left shoulder in preparation for moving into the left westbound lane ahead of Eidemiller. As Ellefson turned his head, a semi-tractor trailer driven by

David White for Supreme Transport Services, L.L.C.[1] exited a parking lot on the north side of County Road C. White was taking a right turn out of the lot onto County Road C and intended to drive westbound toward Interstate 35. Eidemiller saw that the semi-tractor trailer was blocking both westbound lanes of traffic on County Road C, applied his brakes, and coasted to a stop. Apparently because Ellefson was looking in the other direction, he did not immediately notice the semi-tractor trailer blocking the road. Ellefson's passengers did see the semi-tractor trailer in their path and they yelled. At that point, Ellefson applied his brakes and began to skid. After skidding for 84.5 feet, Ellefson's pickup truck struck the left side of the semi-tractor trailer and slid partially underneath it.

White testified that when he was halfway into his turn onto County Road C he felt a bump that he believed could have been a blown tire. White then pulled over to the right side of County Road C to investigate, and as he did so, he dragged Ellefson's crushed pickup truck with him. When the vehicles came to a rest, White's semi-tractor trailer faced westbound and Ellefson's pickup truck faced northbound. The front passenger side of Ellefson's pickup truck was badly crushed.

Emergency personnel arrived at the scene shortly after the accident and pronounced Kelly Ann Kelly dead at the scene. Her death certificate listed the cause of death as "multiple traumatic injuries." At the time of her death, Kelly Ann Kelly was married to appellant Kevin Kelly and the mother of two young children—ages three years and approximately fifteen months. Kelly Ann Kelly was employed as a certified public accountant and earned a salary of approximately $75,000 per year.

Ellefson, Martinson, and Corbin were injured in the accident. The three occupants were pinned in their seats by the collision, and the emergency personnel had to cut off the top of the pickup truck to extricate them. After they were extricated, Ellefson, Martinson, and Corbin were transported by ambulance to a hospital where they were treated. While he was at the hospital, Ellefson submitted to a blood alcohol test.[2] Ellefson stipulated at trial that based on this test, his blood alcohol content was .12 approximately two hours after the accident.

As trustee for the heirs and next-of-kin of Kelly Ann Kelly, Kevin Kelly commenced an action against Ellefson, Eidemiller, and Supreme Transport, alleging that all of the drivers were at fault in causing Kelly Ann Kelly's death. Ellefson answered Kevin Kelly's complaint and crossclaimed against Eidemiller and Supreme Transport. Eidemiller answered Kevin Kelly's complaint and crossclaimed against Ellefson and Supreme Transport. Supreme Transport answered Kevin Kelly's complaint, alleging that the accident was caused by the negligence of Ellefson, Eidemiller, and Lido's, and crossclaimed against Ellefson and Eidemiller.

---

1. David White and Diana Lynn White are a married couple who drive as independent contractors for Supreme Transport Services, L.L.C. under the name D.L. Enterprises, Inc. At the time of the accident, David White was driving the semi-tractor trailer and Diana was riding in the front passenger seat. David White, Diana White, D.L. Enterprises, and Supreme Transport Services are all parties to this lawsuit. By the time this trial began, David and Diana White had been discharged in bankruptcy and Supreme Transport Services was no longer doing business.

2. Before he arrived at Lido's at approximately 5:00 p.m., Ellefson had been at another bar since about 3:30 p.m. Ellefson admitted that he drank two beers at this first bar. Ellefson was charged with criminal vehicular homicide and criminal vehicular injury. Ellefson pleaded guilty and was sentenced to four years in prison.

Kevin Kelly then amended his complaint to include a Minn.Stat. § 340A.801 (2004) dram shop claim against Lido's, asserting that Lido's served Ellefson alcohol when he was obviously intoxicated. Supreme Transport answered Kevin Kelly's amended complaint and added a crossclaim against Lido's. Lido's answered Kevin Kelly's amended complaint and also cross-claimed against Ellefson, Eidemiller, and Supreme Transport.

Lido's served interrogatories on Kevin Kelly. Kevin Kelly's answers to the interrogatories included the allegation that "Lido served Ellefson alcoholic drinks for approximately three hours resulting in a blood alcohol content in excess of the legal limit to operate a car. * * * Ellefson's level of intoxication should have been obvious to employees of Lido." Kevin Kelly's answers also identified Dr. Richard Jensen as a likely expert witness. Kevin Kelly signed the interrogatory answers four times—in his individual capacity, on behalf of each of his two minor children, and as trustee for Kelly Ann Kelly's heirs and next-of-kin. Kevin Kelly supplemented his answers to Lido's interrogatories. In this supplemental answer, Kevin Kelly stated that Jensen would testify at trial that when Ellefson was last served by Lido's at 7:45 p.m., Ellefson would have had a blood alcohol content of .12 to .13 and as an occasional user of alcoholic beverages would have been displaying obvious signs of intoxication recognizable by a person employing usual powers of observation.

Lido's brought a motion for summary judgment. In response to Lido's motion,

Kevin Kelly submitted to the district court an affidavit by Jensen repeating Jensen's assessment that with a blood alcohol content of .12 to .13, when last served by Lido's, Ellefson would have displayed signs of intoxication recognizable to a person "employing usual and reasonable powers of observation." In his memorandum in opposition to Lido's motion for summary judgment, Kevin Kelly argued that the eyewitnesses who claimed that Ellefson was *not* obviously intoxicated lacked credibility. These eyewitnesses included Lido's staff members and the coworkers present at Lido's. Kevin Kelly also argued that Jensen was qualified to testify regarding the obviousness of Ellefson's intoxication. The district court denied Lido's motion for summary judgment.

Preliminary trial proceedings began on September 29, 2003. Before the jury was impaneled on October 3, counsel informed the district court that Kevin Kelly had settled with Lido's and Eidemiller under *Pierringer* releases.[3] Kevin Kelly then moved to strike Lido's from the caption of the case and the special verdict form. Supreme Transport responded by arguing that Lido's should remain on the caption and special verdict form so that Lido's fault could be considered by the jury, and the court should give a jury instruction explaining Lido's absence at trial. Kevin Kelly responded that the instruction regarding a party's absence is to be given only when the parties settle during trial, and that such an instruction was inappropriate here because the jury had not been sworn and therefore the trial had not yet

**3.** "The basic elements of a *Pierringer* release are: (1) The release of the settling defendants from the action and the discharge of a part of the cause of action equal to that part attributable to the settling defendants' causal negligence; (2) the reservation of the remainder of plaintiff's causes of action against the nonsettling defendants; and (3) plaintiff's agreement to indemnify the settling defendants from any

claims of contribution made by the nonsettling parties and to satisfy any judgment obtained from the nonsettling defendants to the extent the settling defendants have been released." *Frey v. Snelgrove*, 269 N.W.2d 918, 920 n. 1 (Minn.1978) (citing John E. Simonett, *Release of Joint Tortfeasors: Use of the* Pierringer *Release in Minnesota*, 3 Wm. Mitchell L.Rev. 1, 3, 8, n. 32, 33 (1977)).

officially begun. Kevin Kelly also argued that Supreme Transport's pretrial disclosures provided no evidence of Lido's fault, and therefore keeping Lido's on the verdict form would confuse the jury.

Supreme Transport replied by asserting that Kevin Kelly's amended complaint and answers to interrogatories provided evidence of Lido's fault, and that these documents were admissible as party admissions. Kevin Kelly argued that pleadings are not admissions because Minnesota is a notice pleading state. The district court granted Kevin Kelly's motion to remove Lido's from the caption and special verdict form. Kevin Kelly then moved to have Eidemiller removed from the caption of the case, but made no argument in support of this motion. The court removed Eidemiller from the caption, but kept his name on the verdict form, stating that CIVJIG 15.35 would be given to the jury to explain his absence as a party at trial. The court also ruled that Kelly Ann Kelly would remain on the special verdict form. The court reserved its ruling on the admissibility of Kevin Kelly's amended complaint, answers to interrogatories, and expert's affidavit.

After the trial began, Kevin Kelly expressly argued that Ellefson was *not* obviously intoxicated on the night of the accident. Kevin Kelly made this argument in his opening argument, and also elicited testimony from Eastep and Martinson that Ellefson did not appear to be intoxicated. Additionally, during closing argument, Kevin Kelly suggested that intoxication was not a cause of the collision, and argued that Kelly Ann Kelly was not at fault for getting into Ellefson's pickup truck. At this point, Supreme Transport attempted to introduce Kevin Kelly's amended complaint, answers to interrogatories, and expert's affidavit, asserting that these documents were admissible as evidence of Kelly Ann Kelly's fault in choosing to ride with Ellefson. The district court then made the ruling that it had reserved earlier, and excluded the documents. Supreme Transport also sought to elicit testimony about Ellefson's obvious intoxication from Supreme Transport's own toxicology expert. The court excluded evidence of obvious intoxication, stating that "obvious intoxication is no longer something that's part of this law." In his closing argument, Kevin Kelly argued that alcohol may not have been a cause of the accident.

The jury found that Ellefson and Eidemiller were not racing before the accident, Supreme Transport was negligent in its operation of its semi-tractor trailer and this negligence was a direct cause of the accident, and Kelly Ann Kelly was not negligent. The jury then allocated 60% of the fault to Supreme Transport, 40% to Ellefson, and 0% each to Eidemiller and Kelly Ann Kelly. The jury awarded damages of $2.7 million.

Supreme Transport moved for a new trial on the issue of liability in part on the grounds that the district court erred in excluding Kevin Kelly's amended complaint, his answers to Lido's interrogatories, and his expert's affidavit. The court denied the motion. Supreme Transport then appealed to the court of appeals. The court of appeals held that Kevin Kelly's amended complaint, answers to interrogatories, and expert's affidavit were adoptive admissions under Minn. R. Evid. 801(d)(2) or under common law, but only to show the fault of Kelly Ann Kelly. The court of appeals also held that the district court committed multiple other errors. Specifically, the court of appeals held that the district court erred in admitting a misleading reconstruction animation, admitting a misleading videotaped re-enactment, failing to instruct the jury that when a driver's speed is unlawful, he forfeits the right-of-way, failing to instruct the jury on DWI and racing, excluding testimony by

Supreme Transport's expert regarding obvious intoxication (which meant that striking Lido's from the special verdict form was also error because this testimony was evidence of Lido's fault), and excluding the testimony and diagram of a state trooper accident-reconstructionist. The court of appeals then reversed and remanded for a new trial. Kevin Kelly filed a petition for review of all issues. We granted review solely on the issue of the admissibility of Kevin Kelly's pleadings, interrogatory answers, and expert's affidavit.

## I.

■ We first address Kevin Kelly's assertion that his amended complaint is not admissible as an admission of a party-opponent.[4] Absent an erroneous interpretation of the law, we review a district court's exclusion of evidence for an abuse of discretion. *Kroning v. State Farm Auto. Ins. Co.*, 567 N.W.2d 42, 45–46 (Minn.1997). Kevin Kelly argues that pleadings are not admissible because (1) a pleading does not meet the definition of a nonhearsay admission of a party-opponent under Minn. R. Evid. 801(d)(2); and (2) admitting pleadings into evidence would frustrate liberal notice pleading and discourage partial settlements.

We agree with the Eighth Circuit, which has said that "[t]he use of trial pleadings as admissions has been a thorny issue in the law of evidence." *Garman v. Griffin*, 666 F.2d 1156, 1157 (8th Cir.1981). Several jurisdictions hold that pleadings that are amended, withdrawn, or superseded are admissible as admissions by a party-opponent. *See, e.g., United States v. GAF Corp.*, 928 F.2d 1253, 1259 (2d. Cir.1991); *Cont'l Ins. Co. of N.Y. v. Sherman*, 439 F.2d 1294, 1298 (5th Cir.1971); *Danko v. Redway Enters., Inc.*, 254 Conn. 369, 757 A.2d 1064, 1067–68 (2000); *Pankow v. Mitchell*, 737 S.W.2d 293, 296 (Tenn.Ct. App.1987); *see also McCormick on Evidence* § 265 (Edward W. Cleary, ed., 3rd ed.1984); 4 John Wigmore, *Evidence in Trials at Common Law* § 1067 (Chadbourn rev.1972). *But see Lytle v. Stearns*, 250 Kan. 783, 830 P.2d 1197, 1208–09 (1992); *Larion v. City of Detroit*, 149 Mich.App. 402, 386 N.W.2d 199, 201–02 (1986); John H. Mansfield, *Evidential Use of Litigation Activity of the Parties*, 43 Syracuse L.Rev. 695, 707 (1992). But some jurisdictions that admit pleadings as admissions have carved out important exceptions to this general rule. *McCormick on Evidence* § 265. An exception for inconsistent and hypothetical pleadings is common because alternative pleading is expressly authorized under notice pleading, and the purpose of giving notice would be frustrated if alternative pleadings could later be used against the pleader as admissions.[5] *See id.*

---

4. Many cases addressing the admissibility of pleadings as party admissions also discuss the use of pleadings for impeachment purposes. *See, e.g., Wilson Storage & Transfer Co. v. Geurkink*, 242 Minn. 60, 65–66, 64 N.W.2d 9, 14 (1954). Additionally, the concepts of substantive admissibility and the use for impeachment are sometimes confused. The district court's ruling did not exclude the use of Kevin Kelly's amended complaint for impeachment purposes, and the use of pleadings for impeachment purposes is not addressed by the parties in their briefs. Accordingly, we address only the admissibility of pleadings as substantive evidence.

5. We note that Kevin Kelly's original claims against Supreme Transport, Ellefson, Eidemiller, and Lido's were neither inconsistent nor hypothetical. Kevin Kelly argued that (1) a bar served a patron who was obviously intoxicated, (2) the patron then negligently participated in a motor vehicle race (3) with a second negligent driver, and in the process (4) the patron collided with a semi-tractor trailer driven by a third negligent driver. We find nothing inconsistent in alleging that multiple parties contributed to causing damages. Furthermore, we conclude that there is nothing hypothetical about any of Kevin Kelly's claims.

Under Minn. R. Evid. 801(d)(2), a statement is a nonhearsay admission of a party-opponent if the "statement is offered against a party and is * * * the party's own statement, in either an individual or a representative capacity," or the statement is otherwise attributable to the party.[6] Kevin Kelly argues that a complaint is not a "statement" essentially because under Minnesota's notice pleading system, parties are permitted to make broad conclusory statements, and the amendment of pleadings is freely allowed.

Notice pleading took effect in Minnesota in 1952 following the adoption of Minn. R. Civ. P 8.01, which provides: "A pleading which sets forth a claim for relief * * * shall contain a short and plain statement of the claim showing that the pleader is entitled to relief * * *. Relief in the alternative or of several different types may be demanded." We have held that "[t]he functions of a pleading today are simply to give fair notice to the adverse party of the incident giving rise to the suit with sufficient clarity to disclose the pleader's theory upon which his claim for relief is based, to permit the application of the doctrine of res judicata, and to determine whether the case must be tried by the jury or the court." *N. States Power Co. v. Franklin*, 265 Minn. 391, 394, 122 N.W.2d 26, 29 (1963) (citing *Roberge v. Cambridge Coop. Creamery Co.*, 243 Minn. 230, 67 N.W.2d 400 (1954)). Notice pleading replaced code pleading, which required a complaint to include a specific statement of ultimate facts sufficient to constitute a cause of action. *Id.*

Under the old code pleading system, we held that amended or superceded pleadings were admissible as party admissions when the party proceeded inconsistently thereafter. *Carlson v. Fredsall*, 228 Minn. 461, 472–73, 37 N.W.2d 744, 750–51 (1949). The original complaint in *Carlson* alleged that an accident was caused solely by the negligence of two defendants. *Id.* at 468, 37 N.W.2d at 749. The complaint was later amended to allege the negligence of two additional defendants. *Id.* at 463, 37 N.W.2d at 746. The two additional defendants subsequently sought to introduce the original complaint into evidence, and we held that the original complaint was admissible as a party admission. *Id.* at 468, 473, 37 N.W.2d at 749, 751.

Shortly after the adoption of notice pleading, we were again presented with the question of the admissibility of pleadings. In *Wilson Storage*, we reiterated the rule of *Carlson* that allegations of fact in pleadings may be introduced against the pleading party as admissions when the party proceeded inconsistently thereafter, but we excluded the proffered complaint on the ground that the party had not proceeded inconsistently. *Wilson Storage*, 242 Minn. at 65–66, 64 N.W.2d at 14. In 1978, we reiterated the rule of *Carlson*, but excluded the proffered evidence, which was a statement of the case. *Lines v. Ryan*, 272 N.W.2d 896, 901 n. 4 (Minn. 1978).

Although we reiterated the rule in *Carlson* in both *Wilson* and *Lines*, there has been only one occasion since the adoption of notice pleading in 1952 that we have concluded that a pleading was actually admissible as a party admission. *In re Perry*, 494 N.W.2d 290, 294 (Minn.1992). In *Perry*, an attorney who was the subject of a disciplinary action objected to the referee's reliance on pleadings that the attorney had filed in an earlier lawsuit. *Id.* at 293. In these pleadings, Perry alleged that he had pledged trust funds as collateral with-

---

**6.** Minnesota Rule of Evidence 801(a) provides that "[a] 'statement' is (1) an oral or written assertion or (2) nonverbal conduct of a person, if it is intended by the person as an assertion." There is no definition of "assertion" in the Minnesota Rules of Evidence.

out the consent of Perry's mother, the settlor, in violation of the trust agreement. *Id.* at 292–93. In the course of the disciplinary proceeding, Perry gave a sworn statement that the trust agreement allowed him to exercise "absolute discretion" in making distributions of trust principal, meaning that he did *not* violate the trust agreement when he pledged the trust funds as collateral. *Id.* at 293. We held that the pleadings in which the attorney alleged that he *had* violated the trust agreement were admissible as admissions in the disciplinary action.[7] *Id.* at 294.

The pleadings that we admitted in *Perry* contained allegations about the pleader's own behavior and the content of a trust agreement that the pleader had drafted. *Id.* at 292–93. Kevin Kelly's amended complaint is substantively different from the pleadings admitted in *Perry* because Kevin Kelly had no personal knowledge of the contested facts. Kevin Kelly's amended complaint alleged that Lido's had served alcoholic beverages to Ellefson when Ellefson was obviously intoxicated. But, because Kevin Kelly was not at Lido's with Ellefson, Kevin Kelly was not alleging facts within his personal knowledge. Thus, the precise question we must answer here is much different than the one addressed in *Perry*. Here, we must determine whether a pleading that alleges facts *of which the pleader has no personal knowledge* is admissible as a party admission when the pleading party has proceeded at trial in a manner inconsistent with the pleadings.

■■ According to the committee comment to Minn. R. Evid. 801(d)(2), the rationale for admitting party admissions is "based more on the nature of the adver-

sary system than in principles of trustworthiness or necessity * * *." This comment also states that "[t]he requirements of trustworthiness, firsthand knowledge, or rules against opinion which may be applicable in determining whether or not a hearsay statement should be admissible do not apply when dealing with party admissions." Minn. R. Evid. 801(d)(2) comm. cmt.—1989. Without concluding whether the committee comment is an accurate statement of the law in general, we conclude that the comment is inapplicable to the admissibility of pleadings as party admissions. Under notice pleading, one function of a complaint is "to give fair notice to the adverse party of the incident giving rise to the suit." *N. States Power Co.*, 265 Minn. at 394, 122 N.W.2d at 29. For us to conclude, in the context of party admissions, that a party "admits" facts not within his personal knowledge by alleging those facts in a complaint would in effect thwart the underlying "fair notice of claim" purpose of notice pleading by unduly restricting the pleading party. Here, Supreme Transport sought to introduce Kevin Kelly's amended complaint, which alleged that Lido's had served alcoholic beverages to Ellefson when Ellefson was obviously intoxicated. Because these factual allegations were not within Kevin Kelly's personal knowledge, we hold that the district court did not abuse its discretion in excluding Kevin Kelly's amended complaint.

## II.

■ Having concluded that Kevin Kelly's amended complaint is not admissible as a party admission, we turn next to his argument that his interrogatory answers

---

7. *Perry* was an attorney discipline matter and therefore the proceedings were not subject to the same procedural and evidentiary rules that govern a civil trial. *See In re Gillard*, 271 N.W.2d 785, 808 (Minn.1978) (holding that, while disciplinary proceedings are not encumbered by technical rules and formal requirements, this court observes due process in exercising disciplinary jurisdiction.).

are similarly inadmissible. Supreme Transport sought to introduce Kevin Kelly's initial answers to Lido's interrogatories as party admissions. Under Minn. R. Civ. P. 33.01, interrogatories served on parties must be answered fully in writing and signed under oath, or objected to. Minnesota Rule of Civil Procedure 33.02 provides that answers to interrogatories "may be used [at trial] to the extent permitted by the Minnesota Rules of Evidence." We have not previously analyzed the admissibility of interrogatory answers or interpreted the foregoing language in the rule.[8]

The general rule in other jurisdictions appears to be that interrogatory answers are admissible as party admissions provided that the substance of the answers satisfies the rules of evidence.[9] Kevin Kelly's initial answers to Lido's interrogatories contained the following statement:

Lido served Ellefson alcoholic drinks for approximately three hours resulting in a blood alcohol content in excess of the legal limit to operate a car. Ellefson admits he was an inexperienced drinker and the quantity of beverages in combination with Ellefson's level of intoxi-

cation should have been obvious to employees of Lido.

This statement is Kevin Kelly's factual allegation about the conduct and statements of two other parties. But, since Kevin Kelly was not present at Lido's, he has no personal knowledge of the facts asserted. Because of this lack of personal knowledge, the substance of Kevin Kelly's initial interrogatory answers would not be admissible if he testified to the same information as a witness at trial. Minn. R. Evid. 602 ("A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."). Because the substance of Kevin Kelly's initial interrogatory answers would not otherwise be admissible under Minn. R. Evid. 602, we conclude that the admission into evidence of his initial interrogatory answers would violate Minn. R. Civ. P. 33.02, which permits the use of interrogatory answers to the extent permitted by the Minnesota Rules of Evidence. Therefore, we hold that the district court did not err when it excluded Kevin Kelly's initial interrogatory answers.

---

**8.** Shortly after the Minnesota Rules of Evidence were adopted, we held that a defendant's answers to the Attorney General's interrogatories were properly admitted into evidence because the defendant waived his Fifth Amendment claim by answering the interrogatories, but we did not address the procedural basis for the admission of the answers. *State v. Hanson,* 285 N.W.2d 487, 488–90 (Minn.1979).

**9.** *See, e.g., Bailey v. New England Mut. Life Ins. Co. of Boston, Mass.,* 1 F.R.D. 494, 495 (S.D.Cal.1940) (holding that interrogatory answers may be used as a "confession * * * but not by the answering party as a self-serving statement free from the hazards of cross-examination."); *Barrett v. Melton,* 112 Ariz. 605, 545 P.2d 421, 423 (1976) (holding that under Ariz. R. Civ. P. 33(b), which is nearly identical

to Minn. R. Civ. P. 33.02, answers to interrogatories are admissible as party admissions if offered by the opposing party); *Theesen v. Cont'l Life & Accident Co.,* 90 Idaho 58, 408 P.2d 177, 179 (1965) (concluding that "[a]nswers to interrogatories are admissible insofar as the rules of evidence permit and answers which are hearsay, opinion, or contrary to the best evidence rule are not usually admissible."); *Baylor v. Norfolk and Western Ry. Co.,* 177 W.Va. 674, 355 S.E.2d 924, 927 (1987) (excluding answers to interrogatories on Rule 403 basis because there was other admissible evidence that was less prejudicial). *But see Piercy v. Wal–Mart Stores, Inc.,* 311 Ark. 424, 844 S.W.2d 337, 341–42 (1993) (holding that opposing party's answers to interrogatories are hearsay and are generally inadmissible).

### III.

Supreme Transport also sought to introduce Kevin Kelly's supplemental interrogatory answer that outlined the proposed testimony of his expert toxicologist, who did not ultimately testify at trial. Kevin Kelly supplemented his initial interrogatory answers in response to Lido's interrogatory that asked in relevant part: "As to each expert whom you expect to call as a witness at trial, please state: * * * (g) the subject matter on which he or she is expected to testify; (h) the substance of the facts to which he or she is expected to testify and where the facts were obtained; (i) the substance of the opinions to which he or she is expected to testify; and (j) a summary of the grounds for each opinion." Kevin Kelly's supplemental answer to this interrogatory outlined his expert toxicologist's qualifications, proposed testimony, and opinions relevant to the case. Because Kevin Kelly's supplemental answer is expressly presented as the opinion and proposed testimony of another person, the substance of the supplemental answer is essentially an out-of-court statement made by a nonparty who did not testify at trial. Generally, an out-of-court statement made by a nonparty is inadmissible hearsay. Minn. R. Evid. 801(c).

It appears that Supreme Transport asserts that the supplemental interrogatory answer was nonetheless admissible as an adoptive admission under Minn. R. Evid. 801(d)(2)(B), which provides that a statement is not hearsay if it is offered against a party and is "a statement of which the party has manifested an adoption or belief in its truth." In essence, Supreme Transport argues that by submitting the interrogatory answer, Kevin Kelly manifested an adoption of the truth of the expert's statements. In the context of criminal proceedings, we have held that for a hearsay statement to be admissible as a defendant's adoptive admission of the defendant's guilt, there must be a manifestation "by conduct or statements which are *unequivocal, positive, and definite* in nature, *clearly showing* that in fact defendant intended to adopt the hearsay statements as his own." *Village of New Hope v. Duplessie*, 304 Minn. 417, 425, 231 N.W.2d 548, 553 (1975) (emphasis in original). Although this holding in *Duplessie* was limited to the context of criminal proceedings, the application of that holding to this case serves to balance the investigative purpose of the discovery process and the rationale behind the party admissions doctrine.

We conclude that by outlining the proposed testimony of his expert toxicologist in direct response to Lido's request for this information, Kevin Kelly did not expressly adopt the expert's opinion as his own. For the same reason, the substance of the supplemental interrogatory answer was not a statement of an authorized party or agent under Minn. R. Evid. 801(d)(2)(C) & (D). While it may be possible for a party to adopt an expert's opinions and proposed testimony as his own position, we conclude, based on the phrasing of Lido's interrogatory and Kevin Kelly's supplemental answer, that Kevin Kelly did not do so here. Because Kevin Kelly did not unequivocally adopt his expert's opinions as his own, we conclude that Kevin Kelly's supplemental answer that outlined the expert's opinions and proposed testimony was hearsay and therefore not admissible. *See* Minn. R. Evid. 801(c), 802. For the foregoing reasons, we hold that the district court did not abuse its discretion when it excluded Kevin Kelly's supplemental interrogatory answer outlining the proposed testimony of his expert toxicologist.

### IV.

Finally, we address Kevin Kelly's argument that the court of appeals erred when it reversed the district court's decision to exclude the affidavit of Kevin Kel-

ly's expert toxicologist. Initially, Kevin Kelly submitted the expert's affidavit with his legal memorandum opposing Lido's motion for summary judgment. The affidavit contained the toxicologist's opinion regarding the amount of alcohol Ellefson consumed, the effect this consumption had on Ellefson's behavior, and the toxicologist's conclusion that Ellefson would have displayed signs of obvious intoxication. At trial, Supreme Transport sought to introduce the affidavit as an admission by Kevin Kelly. The district court excluded the affidavit, but the court of appeals reversed, holding that the affidavit was admissible as a party admission.

As previously noted, an out-of-court statement made by a nonparty is generally inadmissible hearsay. Minn. R. Evid. 801(c), 802. The Minnesota Rules of Evidence contain a number of hearsay exceptions, but there is no hearsay exception for expert evidence. Minn. R. Evid. 803, 804. Minnesota Rule of Evidence 702 provides that if specialized knowledge will assist the trier of fact to understand the evidence, a witness qualified as an expert *may testify thereto*. Minn. R. Evid. 702 (emphasis added). Rule 702 does not provide that a witness qualified as an expert may submit an affidavit in lieu of personal testimony. Further, we have stated in a previous opinion that "the state should not be permitted to launder inadmissible hearsay evidence, turning it into admissible evidence by the simple expedient of passing it through the conduit of purportedly 'expert opinion.'" *State v. DeShay*, 669 N.W.2d 878, 886 (Minn.2003). We conclude that, here, the admission of the toxicologist's affidavit as a party admission would circumvent the general rule that, unless otherwise agreed by the parties, expert opinions are to be presented through expert testimony. Moreover, to admit the affidavit here would impermissibly allow the toxicologist's opinion to be presented to the jury without being subject to the safe-

guard of cross-examination. *See* Minn. R. Evid. 702; *Murray v. Walter*, 269 N.W.2d 47, 49 (Minn.1978) (discussing the importance of a wide range of inquiry on cross examination); *see also Crawford v. Washington*, 541 U.S. 36, 61, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004) (Thomas, J., concurring) (stating that testimony must be subject to "testing in the crucible of cross-examination"). We therefore hold that the district court did not abuse its discretion when it excluded the toxicologist's affidavit.

Reversed and remanded.

GILDEA, J., not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.